[No. D017790. Fourth Dist., Div. One. June 1, 1994.]

ANTHONY ALFRED CIANI, Plaintiff and Appellant, v.
SAN DIEGO TRUST AND SAVINGS BANK, as Trustee, etc., et al.,
Defendants and Respondents.

**COUNSEL**

D. Dwight Worden and Michael S. Haberkorn for Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps, Steven S. Wall and Jeffrey A. Chine for Defendants and Respondents.

**OPINION**

**FROEHLICH, J.**—Anthony Alfred Ciani (Ciani) appeals from a judgment which denied his request for reimbursement of the attorney fees he incurred in a lawsuit and in a postlitigation administrative appeal. Both his lawsuit and his administrative appeal were directed toward preventing the destruction of the so-called "Green Dragon Colony," which he believed should be preserved as part of the architectural heritage of La Jolla.

The trial court exercised its discretion under Code of Civil Procedure[1] section 1021.5 and denied his request for fees on the ground that his involvement in the lawsuit was "unnecessary," it being duplicative of the actions by state attorneys.

Ciani claims on appeal that the trial court abused its discretion in employing an erroneous test for "necessity," and erred in taking an unduly restrictive view of his contributions. He also asserts he should have recovered fees under a "substantial benefit" theory, claiming that his actions conferred concrete benefits upon the citizenry.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

## Factual and Procedural Background

The focus of Ciani's effort was to preserve certain structures, known as the "Green Dragon Colony," from being razed by its owner (hereafter Trust). (*Ciani v. San Diego Trust & Savings Bank* (1991) 233 Cal.App.3d 1604, 1608-1610 [285 Cal.Rptr. 699] [hereafter *Ciani I*].)

### I. The Demolition Begins

Demolition of the Green Dragon Colony required a coastal development permit because it was located on realty within the California coastal zone. Accordingly, in 1990 the Trust applied for demolition permits from the City of San Diego (City), which acted as the delegated agency to administer local coastal permits. After one year without action, the Trust gave notice it believed the permit was "deemed approved" under the Permit Streamlining Act (Gov. Code, § 65920 et seq.) and then filed suit seeking to force City to issue the permit. City and the Trust ultimately entered a stipulated agreement which resulted in a writ being issued by the superior court ordering that the permit be issued. The permit was issued and demolition commenced on the morning of July 10, 1991. (*Ciani I, supra*, 233 Cal.App.3d at pp. 1609-1610.)

### II. The Demolition Is Enjoined

On July 9 Ciani learned of the stipulated agreement to permit demolition. He immediately contacted the California Coastal Commission (Commission) to inform it of the impending plan to demolish the structures. The following morning he again contacted the Commission as well as Deputy Attorney General Jamee Patterson (Patterson), who had represented the Commission in prior matters, to implore them to act to stop the demolition. Although Patterson expressed some initial doubt about whether a lawsuit and injunction to stop demolition (which had already commenced) could be filed quickly, by noon on July 10 Patterson had agreed to undertake such a lawsuit.

Later in the afternoon of July 10, Patterson and Ciani filed separate, but essentially identical, lawsuits seeking to stop demolition pending a judicial determination of whether the Commission had appellate jurisdiction to review the City-issued permit.[2] At that time, both plaintiffs sought a temporary restraining order (hereafter T.R.O.) from the presiding judge to restrain further demolition. However, because the requested T.R.O. effectively sought to overturn the earlier writ permitting demolition, the presiding judge

---

[2]Both the Commission and Ciani filed appeals of the City-issued permit. (*Ciani I, supra*, 233 Cal.App.3d at p. 1613.)

directed that the matter be heard before Judge Gamer, who had signed the writ ordering issuance of the demolition permits. Ciani's counsel indicated they would move to disqualify Judge Gamer, and then departed.

Because counsel for the Trust had indicated during court hearings on the T.R.O. that demolition was nearly complete, Patterson believed nothing more could be done to save the buildings. However, Patterson drove past the buildings that night and saw that they had not been demolished, but that substantial portions remained standing. Knowing this, Patterson returned to court the next morning with Ciani to seek a T.R.O. Judge Gamer ultimately issued a T.R.O. to preserve the buildings until she could hear argument on the request for a preliminary injunction.[3] Although Judge Gamer later denied the preliminary injunction, she stayed further demolition to allow the Attorney General and Ciani to file an appeal with this court testing the validity of the demolition permit.

In *Ciani I* this court ultimately ruled the Commission did have jurisdiction to review a permit such as this one, which was issued by operation of law under the "Permit Streamlining Act." It further ruled that the appeals were timely filed.[4] Accordingly, this court ruled that demolition be stayed to permit the Commission to exercise its appellate jurisdiction. (*Ciani I, supra,* 233 Cal.App.3d at p. 1621.)

### III. *The Administrative Proceedings*

*Ciani I* preserved the Commission's jurisdiction to review the City-issued permit. Thereafter, Ciani pursued his administrative appeal.[5] He presented evidence and encouraged others to offer evidence on the historic value of the Green Dragon Colony. He also presented evidence on the feasibility of

---

[3]There is little doubt that Ciani was active in gathering information presented at the T.R.O. hearing. He collected documents, took photographs of the state of the demolition, and provided oral testimony that restoration of the buildings was possible. However, whether that was necessary or beneficial is a factual matter. Since the sole legal issue decided favorably to plaintiffs in *Ciani I* was that the July 10 appeals of the permit were timely, and hence the court was obliged to stay the effectiveness of the permits, the evidence produced by Ciani could well be viewed as of little necessity or benefit.

[4]Three different appeals were filed by two members of the Commission, by Ciani, and by the Sierra Club. Preserving the efficacy of these appeals was a primary element of the Commission's argument that this court should stay further demolition pending hearing in this court on the petition for a writ of supersedeas.

[5]Ciani also assisted in formulating the interim "cleanup/preservation" plan. While resolution of the appeal in *Ciani I* was pending, the Trust contended the partly demolished buildings constituted a hazard and a nuisance and should be demolished. Ciani was instrumental in locating experts to create a plan which allowed for partial cleanup (along with identifying and segregating historically significant materials) pending resolution of *Ciani I* and the administrative proceedings.

restoring the buildings despite the partial demolition the Trust had accomplished prior to the T.R.O.

Ciani advocated rejection of development and imposition of a requirement that the Trust restore the buildings. However, the Commission instead chose to follow its staff recommendation, which was that the development permit allowing demolition be issued subject to staff-recommended modifications to the conditions of approval. These changes did represent some alterations to the City-issued permit.[6] At bottom, however, the Commission's permit represented rejection of Ciani's principal goal of preventing destruction of the Green Dragon Colony.

## IV. *The Fee Request*

After *Ciani I* was filed and the Commission issued its revised permit, the parties agreed the only issue for resolution in this lawsuit was whether Ciani would be entitled to fees. Accordingly, the parties stipulated to first litigate whether Ciani would be entitled to any attorney fees, agreeing that the issue of "amount" would be resolved only after the court first decided entitlement.

## V. *The Ruling*

The court ruled Ciani was not entitled to fees. It first decided that the "private attorney general" doctrine (§ 1021.5), rather than the common law "substantial benefit" doctrine, applied because the dispositive issue in the lawsuit was one of statutory interpretation, and the benefit from Ciani's contribution was not an "actual or concrete" benefit necessary for application of the common law doctrine, but was more ephemeral and hence within section 1021.5.

The court then concluded Ciani did not qualify under the statute because there was no "necessity" for his involvement in light of the active prosecution of the dispositive issues by the state. The court viewed the only significant benefit emerging from the lawsuit to be one of statutory interpretation and Ciani's contributions to the key issues in terms of legal theories or evidentiary matters to be duplicative of efforts by the state.

---

[6]Ciani hails these conditions as substantial benefits to the community and rather immodestly credits his own activism for their creation. The evidence would permit a trial court to reject both tenets. For example, the modifications were de minimis: (1) any future development was to incorporate the scale, character and certain design elements of the Green Dragon Colony, and to require the owner to fund a feasibility study to decide the appropriate type and density; (2) the City-imposed signage plan was to be upgraded; and (3) a 90-day "salvage plan" was to be imposed to allow interested parties to salvage materials from the site. These changes could be deemed de minimis, and there is no compelling evidence that any changes made were the result of Ciani's contribution. Ciani advocated blocking any development; the Commission staff was apparently the source of the recommended changes to the permit which were ultimately adopted.

## VI. *Appellate Contentions*

Ciani's appeal claims the ruling which denied him fees was an abuse of discretion. He argues the court erred by overlooking his contributions to both the lawsuit and the later administrative proceedings. We conclude the trial court did not abuse its discretion in denying fees. Its conclusion that Ciani's contributions to the lawsuit were duplicative and unnecessary is amply supported. The trial court was also correct, we believe, in concluding that a fee award for appearances before an administrative body is not authorized in ordinary circumstances.

ANALYSIS

## I. *Standard of Review*

■ An award of attorney fees under section 1021.5 requires the applicant to meet three criteria: (1) the action resulted in the enforcement of an important right affecting the public interest; (2) a significant pecuniary or nonpecuniary benefit was conferred on a large class of persons; and (3) the necessity of private enforcement and the attendant financial burden thereof make the award appropriate. Whether the applicant has proved each of these criteria is a matter primarily vested in the trial court. (*Planned Parenthood* v. *Aakhus* (1993) 14 Cal.App.4th 162, 169-170 [17 Cal.Rptr.2d 510].)

■ On appeal, our review of the trial court's decision under section 1021.5 is circumscribed. "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303].) Thus, we may not disturb the ruling here "absent a showing that the court abused its discretion . . . , i.e., the record establishes there is no reasonable basis for the [ruling]." (*Feminist Women's Health Center* v. *Blythe* (1993) 17 Cal.App.4th 1543, 1562 [22 Cal.Rptr.2d 184].)

## II. *There Is Substantial Support for the Conclusion That Ciani's Participation in the Lawsuit Was Not "Necessary"*

■ The trial court concluded the lawsuit by the Commission and the duplicative lawsuit by Ciani resulted in the enforcement of an important right affecting the public interest, and conferred a significant nonpecuniary benefit on a large class of persons by producing the statute-clarifying opinion of *Ciani I.* The first two criteria were thus met; however, the court

concluded the third criterion was *not* met: that there was no *necessity* for private enforcement because Patterson (on behalf of the Commission) actively prosecuted the dispositive issues, rendering Ciani's participation unnecessary.

In reaching this conclusion the trial court relied on *Committee to Defend Reproductive Rights* v. *A Free Pregnancy Center* (1991) 229 Cal.App.3d 633 [280 Cal.Rptr. 329], which outlined factors to be considered on the "necessity" issue. In *Reproductive Rights*, both the state and a private citizen had pursued parallel lawsuits seeking the same relief. There, the trial court refused to award fees, reasoning (1) the private party should have first determined whether the state would pursue the action, and (2) once the state filed suit the private action was unnecessary. (*Id.* at p. 640.) The *Reproductive Rights* court reversed, holding that neither factor ipso facto barred an award of fees. (*Id.* at p. 641.) The court remanded to permit the trial court to decide whether attorney fees could be awarded, even though the government had pursued the same lawsuit, reasoning the colitigating private party may still have rendered necessary and significant services of value to the litigation. The *Reproductive Rights* court ruled that the important factors in this determination were (1) whether the private party had advanced significant factual or legal theories which were adopted by the court and which were not duplicative of those advanced by the state; and (2) whether the private party had produced substantial evidence significantly contributing to the judgment which was not duplicative of or cumulative to that produced by the state. (*Id.* at pp. 642-643.)

The trial court applied those criteria here. The court concluded (1) Ciani had failed to advance significant factual or legal theories which were not duplicative of those advanced by the Commission; and (2) Ciani had failed to produce any evidence significantly contributing to the trial court or appellate judgments which was not duplicative of or cumulative to that produced by the Commission. Based thereon, the trial court concluded the "necessity" factor was not satisfied. On appeal, Ciani challenges both the factual conclusions of the trial court and the legal test applied by it.[7]

As to Ciani's dispute about the factual conclusions of the court, he argues he did proffer nonduplicative theories and evidence essential to the relief obtained. The theory he argued, however, was identical to that advanced by the Commission: that the Permit Streamlining Act did not obviate appellate jurisdiction of the Commission. The evidence he touts as essential—examples of other projects which were restored—rests on his subjective belief that

[7]Ciani also argues the administrative proceedings must be considered part of the legal action; in those proceedings he did advance nonduplicative legal theories and evidence. We consider below his claim for fees in the administrative proceedings.

such evidence caused the judge to issue a T.R.O. in the early stages. However, the same judge who ruled on the T.R.O. also rejected Ciani's claim that he played a critical role in the T.R.O. "The 'experienced trial judge is the best judge of the value of professional services rendered in his court' " (*Serrano* v. *Priest, supra,* 20 Cal.3d at p. 49), and the trial court here could well have decided that *other* factors (*not* Ciani's contribution) constituted the moving force behind the T.R.O. More importantly, the "benefit" from *Ciani I* was not the injunction, but was statutory clarification, which is unrelated to whether this particular property was temporarily spared destruction.

Ciani also argues the court applied an improper legal test, specifically asserting that the two factors set forth by the *Reproductive Rights* court are not exclusive and that additional factors should have been considered in assessing "necessity." He identifies these other considerations as (1) whether similar results would have been obtained "but for" the contribution of the private party, and (2) whether private counsel provided substantial assistance to the state.[8] ■ First, Ciani's appellate claim must be deemed waived, or any error invited, because both parties below cited and relied on the two factors set forth by the *Reproductive Rights* court as supporting their respective positions. Although Ciani did suggest that the *Reproductive Rights* factors did not constitute a definitive "test," at no point did he suggest below the other criteria he now raises on appeal. Thus, the claimed error may be deemed waived.

■ Furthermore, we are convinced that even had Ciani proffered the newly posited factors below, the trial court's determination would have been unchanged. The first factor (i.e., similar results would not have been obtained but for private party's acts) is subsumed within the trial court's determination that the dispositive legal issues in the lawsuit and benefits created thereby were fully advanced by the state, rendering Ciani's participation in the lawsuit unnecessary.[9] Ciani's suggested second factor (i.e., whether the private party provided "substantial assistance" to the state) is posited without citation to legal authority, and would undercut the requirement for "necessity" by reducing the threshold from "necessary activity" to mere "helpful activity."

---

[8]Ciani also purports to identify two other considerations: whether the public interest advanced by private counsel would otherwise have been advanced; and the adequacy of actual government enforcement. However, both of these appear to be mere lesser-included or subsidiary inquiries encompassed by his first factor (i.e., whether similar results would have been obtained without the contribution of the private party).

[9]Ciani claims the same result would *not* have been obtained "but for" his involvement, because it was he who notified the Commission and the Attorney General of the impending demolition and convinced them to move forward. However, the trial court dismissed this very argument as a basis for fee entitlement. It acknowledged Ciani's role in sounding the alarm, but stated: "I believe Mr. Ciani's participation beyond the notification . . . I don't believe his participation in this case was necessary." Thus, having sounded the alarm, and having known

We conclude the trial court did not abuse its discretion in denying attorney fees for the lawsuit which produced *Ciani I.*

### III. *The Trial Court Was Justified in Considering Ciani's Participation in the Subsequent Commission Proceedings to Be an Activity Not Entitling an Award of Attorney Fees*

Ciani next claims the trial court erred because it assessed his right to fees by focusing solely on the litigation, and it improperly ignored his participation in the subsequent Commission proceedings for purposes of assessing his right to fees. We disagree. First, because a fee award under section 1021.5 depends on whether the litigant's "action" conferred a substantial benefit, the primary focus must be on what benefit accrued from the *lawsuit*; the mere fact the lawsuit creates the right to commence or pursue collateral administrative proceedings does not automatically allow postlitigation administrative activity to fall under the umbrella of benefits conferred by the lawsuit. Second, even assuming Ciani's postlitigation administrative activity could be deemed a necessary and useful aspect of his lawsuit, there is substantial evidence to support the factual conclusion that his administrative activity did not confer any substantial benefit. Either reason supports denial of Ciani's fee request.

#### A. *Participation in Administrative Proceedings Collateral to the Lawsuit Is Not Automatically Compensable Under Section 1021.5*

Section 1021.5 specifies that fees may be awarded to a party "in any *action* which has resulted in the enforcement of an important right affecting the public interest." (Italics added.) ■ This court has previously opined that section 1021.5's reference to "action" means a judicial action, and that the statute does not extend to fees incurred in an administrative proceeding. (*Beach Colony II* v. *California Coastal Com.* (1985) 166 Cal.App.3d 106, 115-116 [212 Cal.Rptr. 485].)

Thus, even though a common factual core is shared by both a lawsuit and a collateral administrative proceeding, this commonality does not automatically require the court to treat the "benefits" from the administrative action as benefits created by the "action." (*Californians for Responsible Toxics Management* v. *Kizer* (1989) 211 Cal.App.3d 961, 971-972 [259 Cal.Rptr. 599], hereafter *Kizer.*) In *Kizer*, for example, the litigant filed a lawsuit to force the owner of a toxic waste facility to identify and remedy contamination on its site; ultimately, the owner entered a consent decree requiring

the Commission was going to act vigorously to preserve its jurisdiction, Ciani did not need to involve himself in the lawsuit.

cleanup. (*Id.* at p. 965.) Although the *Kizer* court concluded the litigant was entitled to some fees for the successful lawsuit, it affirmed the trial court's refusal to award fees incurred in collateral proceedings consisting of hearings before the Water Quality Control Board which resulted in an order requiring the owner to close certain waste ponds, even though one of the goals of the lawsuit was such a closure of ponds. The *Kizer* court concluded that although the administrative proceedings involved the same parties and subject matter, the litigant still had to show that the time spent before the Water Quality Control Board was "reasonably expended on the litigation because it was both *useful and necessary and directly contributed to the resolution of the action.*" (*Id.* at pp. 971-972, italics added.)

Ciani cites *Wallace* v. *Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836 [216 Cal.Rptr. 649] to argue that results obtained in an administrative proceeding are to be considered when assessing the "benefits" conferred by a litigant's lawsuit. However, *Wallace* stands only for the pedestrian proposition that when a successful lawsuit has conferred the requisite benefit, the court "should ordinarily consider only time reasonably spent on the merits of the action, and should not include peripheral activities *unless* they may be shown to have contributed to the result reached." (*Id.* at p. 847.) In *Wallace*, for example, the lawsuit sought to invalidate minimum price guidelines for milk. The plaintiff settled the lawsuit by agreeing that it would be dismissed as moot if the state held administrative hearings and suspended the minimum prices by a certain date. The state held the hearings and suspended the price guidelines by the target date. The plaintiffs then sought attorney fees. (*Id.* at pp. 841-842.) The court held that the fees for time spent during these stipulated administrative hearings were recoverable because ". . . those proceedings were in effect part of [the lawsuit] because of the terms of the settlement agreement . . . . [¶] . . . Given the terms of the [settlement], it is also apparent that the legal services performed in those proceedings were both useful and necessary to the ultimate resolution of the action, and directly contributed to that resolution." (*Id.* at pp. 848-849.)

Thus, *Wallace* held only that administrative activities are not automatically ignored, and may be considered part of the litigation where such activities *directly contribute to resolution of the action.* Similarly, in *Best* v. *California Apprenticeship Council* (1987) 193 Cal.App.3d 1448 [240 Cal.Rptr. 1], this court upheld the right to fees for administrative proceedings which preceded the lawsuit, reasoning that such services were useful and necessary predicates to bringing a lawsuit for mandamus. (*Id.* at p. 1461.) The touchstone in *Best* was that the plaintiffs attempted to vindicate the right to have religious beliefs accommodated in the employment context,

and the administrative proceedings were necessary to exhaust administrative remedies as a prerequisite to judicial action.[10] (193 Cal.App.3d at pp. 1461-1465.)

 We conclude the test is not whether *Ciani I* and the subsequent Commission proceedings were temporally linked or arose from a common factual core, which Ciani contends is significant. Instead, paraphrasing *Kizer*, the issue is whether Ciani's Commission activities were "useful and necessary and directly contributed to the resolution of [*Ciani I*]." (*Kizer, supra*, 211 Cal.App.3d at p. 972.) Clearly, they did not. The "benefit" conferred was the statutory interpretation in *Ciani I* which affirmed the continuing appellate jurisdiction of the Commission. That benefit arose and was complete regardless of subsequent proceedings. Ciani's invocation of the appellate jurisdiction and pursuit of additional collateral goals, therefore, were in no way useful or necessary nor did they directly contribute to the resolution of *Ciani I*.[11]

B. *Even If the "Benefits" Were Deemed to Include the Development Conditions Imposed by Later Commission Proceedings, There Is Substantial Evidence to Support the Implied Conclusion These "Benefits" Would Have Accrued Without Ciani's Participation*

 Ciani claims his efforts in later proceedings created the benefits of the imposition of additional conditions for development (see fn. 5, *ante*) and it was an abuse of discretion not to account for those benefits in determining whether his actions were necessary to creating such benefits.[12]

---

[10]The *Best* court did suggest a statutory interpretation of section 1021.5 which is somewhat at odds with our view. *Best* viewed the term "action" to encompass nonjudicial actions (193 Cal.App.3d at pp. 1456-1458), a view shared by neither the *Best* dissent (*id.* at pp. 1472-1473) nor us. We note, moreover, that this interpretive foray may be thought dictum, since *Best* also held that fees incurred in the administrative action were recoverable under a federal statute (42 U.S.C. § 1988) which does not limit fees to those incurred in "actions," but instead allows for fees "in any action *or proceeding.*" (193 Cal.App.3d at pp. 1472-1473, italics added.) *Best* cited federal authority as interpreting that statute to encompass fees incurred during administrative proceedings. (*Best, supra*, at p. 1466.) There was thus no need to base the award solely on an interpretation of section 1021.5.

[11]We also note that, as conceded at oral argument, Ciani's efforts before the Commission were mainly through *personal* appearance and testimony rather than representation of legal counsel. Section 1021.5 provides for an award of "attorney fees," and not for compensation for nonattorney services (Ciani does not purport to be a licensed attorney, hence we are not presented with the problem of an attorney's appearance in proper person).

[12]Ciani claims the trial court abused its discretion by entirely ignoring his Commission activities in reaching its decision, pointing out that the trial court's statement of decision discusses substantial benefits but only references the opinion of *Ciani I*, and contains no reference to the development conditions. From this, Ciani concludes the trial court ignored the later benefits. However, the trial court specifically stated the later proceedings *were* relevant to Ciani's attorney fees claim. Having indulged all presumptions and inferences in favor of

Ciani's argument fails, however, because whether a party's actions are causally linked to the benefits created is a factual question for the trial judge (*Kizer, supra,* 211 Cal.App.3d at p. 967), whose determination will not be disturbed if supported by substantial evidence. (*Wallace* v. *Consumers Cooperative of Berkeley, Inc., supra,* 170 Cal.App.3d at p. 845.) We thus examine whether, assuming the "development conditions" attached to the coastal development permit can be deemed "substantial benefits," the trial court still had discretion to deny fees.

There is substantial evidence to support an implied finding of lack of causation—that is, the benefit of additional development conditions would have accrued without Ciani's participation.[13] These conditions were imposed as the result of a Commission appeal. Two parties other than Ciani—the Commission and the Sierra Club—filed separate appeals. At the end of this process, the Commission imposed development conditions along the lines advocated by Commission staff's initial report of August 20, 1991, *not* the disposition originally advocated by Ciani: denial of development and restoration of the buildings.

Ciani describes his actions as causative. His arguments on the facts are simply efforts to elevate his role from that of an interested, active participant in the hearings to one wearing the mantle of moving force behind the development conditions. There is evidence, however, from which a rational trier of fact could reach the contrary conclusion—that is, the "cause" of the conditions was advocacy by others.[14] The short answer to all of Ciani's factual claims is that his arguments were presented to the trial court, and the evidence permits reasonable minds to differ on whether his contributions in fact affected the action taken by the Commission. We therefore cannot

the judgment, as required, we conclude the trial court *did* consider the later proceedings, but implicitly rejected them as grounds for fees, either because of the de minimis nature of the "benefits" or because of lack of "causation."

[13]We are required to view the record in the light most favorable to the judgment, drawing those inferences on which the record is silent to uphold the trial court. (See *Kizer, supra,* 211 Cal.App.3d at p. 972 and fn. 4 [on appeal, court inferred trial court found against plaintiff on issues of necessity and causation].) We have described the "no causation" finding as an "implied" finding, because it is not contained in the written statement of decision. The inference we draw, however, is entirely consistent with the trial court's oral comments. In explaining its reasons for denying fees, the trial court commented: "I don't see how the citizens of San Diego City were unjustly enriched by the preservation of the buildings. . . . [¶] By the condition placed on the permit, as far as I can see, *the Commission would have done that anyway by their appeal.*" (Italics added.)

[14]For example, Ciani claims the Commission found a "substantial issue" (a predicate to entertaining the appeal) *only* because of Ciani's presentation at the August 14 meeting of the Commission. The evidence shows, however, that *the Commission staff* recommended on August 14 that the matter be "opened and continued," which action was taken; and *the Commission staff* recommended a substantial issue be found, which action was also taken.

conclude the trial court abused its discretion in concluding Ciani was not entitled to fees.

IV. *The Trial Court Did Not Abuse Its Discretion in Rejecting Ciani's Request for Fees Under the "Substantial Benefit" Doctrine*

■ Ciani finally claims he should be awarded fees under the "substantial benefit" doctrine. He urges the development conditions, by preserving the historical importance of the Green Dragon Colony site, conferred substantial benefits on an ascertainable class of persons, claiming that these benefits were sufficiently "actual and concrete" to permit an award under that doctrine.

■ The "substantial benefit" theory permits a litigant who has sued in his representative capacity to recover fees under certain circumstances. Specifically, this doctrine may be applied when (1) the litigant's efforts have created a substantial, actual and concrete pecuniary or nonpecuniary benefit; (2) such benefit redounds to members of an ascertainable class; and (3) the court's jurisdiction over the subject matter makes possible an award which spreads the cost proportionately among the members of the benefited class. The doctrine rests on concepts of unjust enrichment: those enriched by an economic windfall should bear their fair share of the costs expended to create the benefits obtained. (*Save El Toro Assn.* v. *Days* (1979) 98 Cal.App.3d 544, 548-549 [159 Cal.Rptr. 577].)

■ When the benefits created are other than tangible and partake more of the ephemeral, recovery is not under the "substantial benefit" doctrine, but must be found, if at all, under the "private attorney general" doctrine codified in section 1021.5. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 945-946 [154 Cal.Rptr. 503, 593 P.2d 200].) The nature of benefits deemed "substantial" and not "intangible" can be seen by noting the review of cases set forth in *Save El Toro Assn.* v. *Days, supra,* 98 Cal.App.3d at page 549: monetary savings to a city by avoidance of construction of a helipad; increased property tax increment resulting from plaintiff's suit; savings made possible by elimination of a religious holiday.

The benefits resulting from the administrative hearings in which Ciani participated did not increase anyone's revenues, did not reduce anyone's expenses, and did not create a fund for the benefit of any recognizable group. Certain materials were preserved for historical purposes; specified restrictions were placed on future development; and an enhanced informal plaque was required to be erected. Although these achievements presumably qualify as "benefits," it is difficult to overrule an implied trial court determination that they were not "substantial." (See *Hull* v. *Rossi* (1993) 13

Cal.App.4th 1763, 1768 [17 Cal.Rptr.2d 457] [de minimis modifications not "substantial benefits"].)

Further, it is difficult to identify an entity or ascertainable class which may have received these benefits, and as to which it is just that some payment be required. Ciani identifies the general citizenry of San Diego as the "ascertainable class" unjustly enriched by the development conditions; however, his suggested "class" is both over-inclusive and under-inclusive. While not all of the citizens will necessarily perceive themselves to be enriched by historical markers in an affluent coastal enclave, others outside of San Diego (such as historians, architects, teachers, etc.) may well reap benefits without contribution. It seems that the third element, which is the ability of the court to spread the cost among members of the benefited class, does not operate here. As was stated in *Save El Toro Assn. v. Days:* "Although the plaintiff and others in the benefited class may place a high value on such intangible benefits, other members of the benefited class may place a lower value on such benefits, and may legitimately complain that they should not be involuntarily saddled with costs that are out of proportion to their perceived benefit. Under such circumstances, the notion of unjust enrichment fails as a justification for an award of attorney's fees." (*Save El Toro Assn. v. Days, supra,* 98 Cal.App.3d at p. 549.)

The trial court here concluded there was no unjust enrichment and the substantial benefit theory did not apply. Since both conclusions are supported by substantial evidence, the court's determination will not be disturbed.

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Nares, J., concurred.