[No. D049452. Fourth Dist., Div. One. Dec. 14, 2007.]

HOGAR DULCE HOGAR, Plaintiff and Appellant, v. COMMUNITY DEVELOPMENT COMMISSION OF THE CITY OF ESCONDIDO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion I and II.

1360

## COUNSEL

Affordable Housing Advocates, Catherine A. Rodman; Kirby, Noonan, Lance and Hoge and R. Bruce Wayne for Plaintiff and Appellant.

Jeffrey R. Epp, City Attorney, Jennifer K. McCain, Assistant City Attorney; Hogan, Guiney, Dick and Michael M. Hogan for Defendant and Appellant.

## OPINION

**BENKE, Acting P. J.**—Plaintiff and appellant Hogar Dulce Hogar (Hogar) successfully and substantially altered defendant and appellant Community Development Commission of the City of Escondido's (the agency) contributions to a state-mandated fund for low-cost housing. Although Hogar did not succeed in obtaining all of the relief it sought, the trial court found that it achieved its primary goal. This determination is supported by substantial evidence in the record. Hence Hogar was entitled to an award of reasonable attorney fees under Code of Civil Procedure[2] section 1021.5.

In calculating the amount of attorney fees awarded to Hogar, the trial court did not abuse its discretion in awarding an amount based on the hours spent on the case and the trial court's determination of a reasonable hourly rate for the work provided by counsel. Contrary to the agency's argument, the trial court was not required to reduce this "lodestar" amount to account for the fact that Hogar did not recover all of the relief it sought. On the other hand, contrary to Hogar's argument, the trial court was not required to multiply the lodestar to account for Hogar's perception of the complexity and difficulty of its case.

The trial court did err in failing to award attorney fees incurred prior to filing of suit. The record shows this work was necessary to the success of Hogar's claim. We also find the trial court erred in failing to award Hogar for

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise specified.

all the work counsel performed in successfully prosecuting Hogar's attorney fee motion. Hence, we reverse the order appealed from with instructions that the trial court award Hogar attorney fees for the period before it filed the underlying complaint and for counsel's work in recovering its fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Hogar I

In our opinion in *Hogar Dulce Hogar v. Community Development Commission* (2003) 110 Cal.App.4th 1288, 1291 [2 Cal.Rptr.3d 497] (*Hogar I*), we summarized the circumstances giving rise to the parties' underlying dispute. "Under the Community Redevelopment Law (Health & Saf. Code, § 33000 et seq.) (CRL), local redevelopment agencies receive so-called tax increment funds generated by redevelopment projects they have initiated. The CRL requires that 20 percent of such tax increment funds be placed in a Low and Moderate Income Housing Fund (Housing Fund). The Legislature has directed that, in general, Housing Fund proceeds should be used to increase, improve or preserve a community's supply of housing affordable to very-low-, low-, and moderate-income individuals and families.

"In this case an unincorporated association, plaintiff and appellant Hogar Dulce Hogar (Hogar), challenged the manner in which defendant and appellant Community Development Commission of the City of Escondido (the agency) calculated payment to its Housing Fund. In its . . . complaint [which by virtue of a tolling agreement was treated as filed in 1997], Hogar alleged that in calculating the amount it paid into the Housing Fund, the agency had unlawfully deducted from its *gross* tax increment receipts amounts it had agreed to pay the County of San Diego (the county) and then paid the Housing Fund 20 percent of its *net* tax increment receipts. Hogar asserted the CRL requires that 20 percent of *gross* tax increment funds be placed in the Housing Fund as opposed to the 20 percent of *net* tax increment funds the agency paid into the fund.

"The trial court agreed with Hogar. The trial court found that under the CRL the agency was required to pay the fund 20 percent of its gross, rather than net, tax increment receipts. The trial court ordered that the agency reimburse the fund the amounts which should have been paid into the fund from the time the fund was established in 1985 until the date of the judgment." (*Hogar I, supra,* 110 Cal.App.4th at p. 1291, fn. omitted.)

In *Hogar I,* we reversed the trial court's judgment in part. We found that under the applicable statute of limitations, the trial court could only order reimbursement of the Housing Fund for a period commencing three years

before Hogar's complaint was filed. (*Hogar I, supra*, 110 Cal.App.4th at p. 1291.)

### 2. *Proceedings on Remand*

On remand the parties entered into a stipulation with respect to costs and Hogar's expected motion for attorney fees. The stipulation stated the time for making a motion for attorney fees and serving a memorandum of costs "would be extended" to the time permitted for filing a memorandum of costs following entry of judgment on remand.

On remand the agency argued it should not be ordered to reimburse the Housing Fund for any period before the date Hogar's complaint was filed in August 1998. The trial court rejected this defense and ordered the agency to reimburse the Housing Fund a total of $1.35 million for the period between December 20, 1994, and the date of judgment, October 6, 2005. The agency did not challenge the judgment.

Hogar failed to file its motion for attorney fees within the time limit set forth in the stipulation, and on that basis the trial court denied Hogar's initial motion for attorney fees. Hogar applied for relief from its failure to timely file its motion, which the trial court granted. The trial court then heard Hogar's motion on the merits. The trial court found that, although Hogar did not achieve all of its goals, it was successful in attaining its primary goals. In particular, the court found that by virtue of its litigation, Hogar not only obtained the judgment which required the agency to transfer $1.35 million to the Housing Fund, it caused the agency to reach an agreement with the County of San Diego (county) in 1998 under which, in future years, 20 percent of the agency's gross taxes, plus interest, will be paid into the Housing Fund. The agency's acquiescence in Hogar's demands with respect to future taxes will, by the year 2030, provide the Housing Fund with an additional $30 million.

Based on its determination that Hogar had been successful, the trial court found Hogar was entitled to a total of $643,056.50 in attorney fees. This figure represented attorney time spent after Hogar filed its complaint in August 1998. The trial court did not make any award for fees incurred before Hogar's complaint was filed or any additional award based on the difficulty or complexity of the case.

## DISCUSSION

## I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III

■ "An award of attorney fees under section 1021.5 requires the applicant to meet three criteria: (1) the action resulted in the enforcement of an important right affecting the public interest; (2) a significant pecuniary or nonpecuniary benefit was conferred on a large class of persons; and (3) the necessity of private enforcement and the attendant financial burden thereof make the award appropriate. Whether the applicant has proved each of these criteria is a matter primarily vested in the trial court. [Citation.]

"On appeal, our review of the trial court's decision under section 1021.5 is circumscribed. 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." [Citations.]' [Citation.] Thus, we may not disturb the ruling here 'absent a showing that the court abused its discretion . . . , i.e., the record establishes there is no reasonable basis for the [ruling].' [Citation.]" (*Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563, 571 [30 Cal.Rptr.2d 581].)

## IV

In its principal argument on appeal the agency contends Hogar was not a successful party within the meaning of section 1021.5. In particular, the agency argues that it agreed to most of the relief Hogar sought when in June 1998 the agency amended its agreement with the county so that in future years the Housing Fund would receive 20 percent of the agency's gross tax receipts. The agency contends Hogar's complaint, which was not filed until after the agency had made its agreement with the county, did not cause it to alter its allocation to the Housing Fund. The agency further contends it did not dispute Hogar's contention the Housing Fund was entitled to reimbursement for the three years preceding initiation of this litigation.

The agency's arguments fail largely because they are not supported by the record. Rather, the record clearly supports the trial court's finding that Hogar's litigation in fact prompted the agency to amend its agreement with

---

*See footnote, *ante,* page 1358.

the county. Moreover, the record refutes the agency's contention that it was willing at all times to reimburse the Housing Fund for years prior to the initiation of Hogar's litigation.

## A. *Legal Principles*

" 'In determining whether a plaintiff is a successful party for purposes of section 1021.5, "[t]he critical fact is the impact of the action, not the manner of its resolution." [Citation.]' " (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 566 [21 Cal.Rptr.3d 331, 101 P.3d 140] (*Graham*).) Under this "broad, pragmatic view of what constitutes a 'successful party' " (*id.* at p. 565) within the meaning of section 1021.5, a plaintiff need not obtain a judgment in its favor to be a "successful party." (See *Godinez v. Schwarzenegger* (2005) 132 Cal.App.4th 73, 89 [33 Cal.Rptr.3d 270] (*Godinez*).) Rather, a plaintiff is a "successful party" whenever it obtains the relief sought in its lawsuit, regardless of whether that relief is obtained " 'through a "voluntary" change in the defendant's conduct, through a settlement, or otherwise.' " (*Graham, supra,* 34 Cal.4th at p. 567.)

A party is successful within this pragmatic approach if: "(1) the lawsuit was a catalyst motivating the defendants to provide the primary relief sought; (2) . . . the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense, as elaborated in *Graham*; and (3) . . . the plaintiffs reasonably attempted to settle the litigation prior to filing the lawsuit." (*Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608 [21 Cal.Rptr.3d 371, 101 P.3d 174]; see also *Graham, supra,* 34 Cal.4th at pp. 567, 575, 577; *Godinez, supra,* 132 Cal.App.4th at p. 89; *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 844 [216 Cal.Rptr. 649]; *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 686 [186 Cal.Rptr. 589, 652 P.2d 437] (*Folsom*).)

Under the catalyst theory, a plaintiff is a successful party and entitled to attorney fees if its lawsuit motivated the defendant to voluntarily provide the relief sought by Hogar. (See, e.g., *Graham, supra,* 34 Cal.4th at p. 567; *Folsom, supra,* 32 Cal.3d at p. 687; *County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 648–651, 659 [52 Cal.Rptr.3d 1]; *Belth v Garamendi* (1991) 232 Cal.App.3d 896, 901–902 [283 Cal.Rptr. 829].) Importantly, the catalyst theory does not require that Hogar's litigation *be the only cause* of defendant's acquiescence. Rather, Hogar's litigation need only be a substantial factor contributing to defendant's action. (See *Chin v. DaimlerChrysler Corp.* (D.N.J 2006) 461 F.Supp.2d 279, 285 [summarizing California catalyst precedent]; *Graham, supra,* 34 Cal.4th at p. 577.)

When, after litigation is initiated, a defendant has voluntarily provided the relief a plaintiff is seeking, the chronology of events may raise an inference that the litigation was the catalyst for the relief. (See *Californians for Responsible Toxics Management v. Kizer* (1989) 211 Cal.App.3d 961, 968 [259 Cal.Rptr. 599]; *Chin, supra,* 461 F.Supp.2d at p. 286.) " 'The appropriate benchmarks in determining which party prevailed are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two.' " (*Folsom, supra,* 32 Cal.3d at p. 685, fn. 31.)

### B. *The Results of Hogar's Litigation*

As we noted in *Hogar I*, at the time it adopted its redevelopment plan, the agency agreed with the county as to a division of the tax increment funds produced by the agency's redevelopment activities. Such agreements giving counties a portion of tax increment receipts were designed to protect counties from the loss of revenue needed for services provided by counties. (See *Hogar I, supra,* 110 Cal.App.4th at p. 1292, fn. 4.) At the heart of the parties' underlying dispute was that portion of the agency's agreement with the county under which the agency paid its Housing Fund 20 percent of the net amount it received from the county rather than the 20 percent of the gross amount of tax increment receipts to which the fund was entitled. "In 1989 the agency was advised by its own counsel that this method of calculating the amount due the Housing Fund was improper and that it was required to pay the Housing Fund 20 percent of the gross tax increment. The underfunding issue was discussed at a public meeting and the agency contacted the county in an effort to amend the tax sharing agreement. The county responded by stating that in the event the validity of the tax sharing agreement was challenged, the county would assist the agency in defending the agreement. However, the county was unwilling to amend the tax sharing agreement or otherwise provide the agency any relief from the provisions of the agreement.

"In 1990 the agency sued the county and argued provisions of the tax sharing agreement had to be modified so the agency could comply with provisions of section 33334.2, subdivision (a). In 1992 the trial court in that action granted the county's motion for summary judgment. The court found that the agency, notwithstanding its obligations under the CRL, was bound by its agreement with the county until a third party had obtained a judgment invalidating it. Because no third party had challenged the agreement, the trial court found the agency was not entitled to any relief." (*Hogar I, supra,* 110 Cal.App.4th at p. 1293.)

Hogar became the third party challenger required by the earlier judgment. In November 1997 Hogar sent the agency a letter demanding it commence

paying the Housing Fund 20 percent of its gross tax receipts and reimburse the fund for amounts the fund should have received in prior years. In response to the demand letter, the agency advised Hogar it would commence negotiations with county to amend the tax sharing agreement. Because it appeared those negotiations would not be concluded quickly, the agency entered into a tolling agreement with Hogar on December 20, 1997. Under the terms of the tolling agreement, the agency agreed any complaint which Hogar eventually filed would be treated as if it were filed on the date of the tolling agreement.

Following Hogar's demand letter and the tolling agreement, the agency commenced negotiations with the county. On June 19, 1998, the agency and county amended their tax sharing agreement so that it provided in the future the Housing Fund would receive 20 percent of the agency's gross tax receipts as required by the CRL. (Health & Saf. Code, § 33000 et seq.) However, the agency and the county made no provision for reimbursement of amounts due the fund in prior years.

On August 6, 1998, Hogar filed a complaint against the agency in which it sought reimbursement to the Housing Fund for the period from 1985 through the effective date of the amendment to the agency's tax sharing agreement with the county. As we have indicated, initially in the trial court Hogar was successful in obtaining a judgment that required the agency reimburse the Housing Fund a total of $5.6 million. Because we determined the statute of limitations did not permit such a large award, on remand Hogar obtained the eventual judgment that required the $1.35 million reimbursement to the Housing Fund.

Given this chronology of events, the trial court could reasonably conclude that overall Hogar's litigation was successful. First, the record makes it clear that in the absence of a third party claim such as Hogar's, the agency and the county would not have amended their tax sharing agreement. Indeed, the 1992 judgment protected the county from any such amendment in the absence of a claim such as Hogar's. In this regard the agency's reliance on 1997 correspondence it received from a staff member of a state Senate committee reporting the State Controller's Office did not approve of the method employed by the agency to compute its obligation to the Housing Fund is unpersuasive. The agency's own counsel had reached the same determination in 1989. Given these circumstances, the trial court was not required to believe a staff member's secondhand report of the views of a state agency would have prompted either the county or the agency to give up the protection provided by the 1992 judgment. Rather, it was far more likely that Hogar's November 1997 demand, which represented the third party claim that would require an amendment under the terms of the 1992 judgment, prompted action by the agency and the county.

We also reject the agency's contention that for purposes of determining Hogar's overall success we must treat the litigation as commencing in August 1998 when Hogar's complaint was actually filed. For purposes of applying the statute of limitations, under the tolling agreement the action commenced as of December 20, 1997. In the particular circumstances presented here we think that is the appropriate point in time at which to measure, in part, the impact of Hogar's litigation. Given the 1992 judgment, Hogar's November 1997 demand letter, and the agency's willingness to enter into a tolling agreement as of December 20, 1997, it is clear that as of that date the agency and the county were operating as if they were in fact engaged in litigation which they needed to resolve. Thus for purposes of measuring the overall impact of Hogar's litigation, that is the point in time when the lawsuit began.

In sum then the record fully supports the trial court's conclusion Hogar's litigation was the catalyst for the agency's agreement with the county to amend the tax sharing agreement. However, apart from its success in obtaining an amendment to the tax sharing agreement, Hogar was also successful in obtaining a $1.35 million reimbursement to the Housing Fund. Although this was only a portion of the total $5.6 million reimbursement Hogar sought, it was nonetheless a substantial amount and an amount that would not have been recovered in the absence of Hogar's litigation. Contrary to the agency's contention, the agency *never* acquiesced in three years of reimbursement to the Housing Fund. The agency consistently argued Hogar had no standing to seek reimbursement for any period before it came into existence in 1997 and when we rejected that argument in *Hogar I* (*Hogar I, supra,* 110 Cal.App.4th at p. 1294), on remand the agency argued it was only required to reimburse the fund for the period following the date of Hogar's August 1998 complaint.

■ As Hogar points out, either element of Hogar's success—the amendment of the tax sharing agreement or the judgment requiring reimbursement of $1.35 million—would have made Hogar's litigation a practical success. Considered together, they make it clear the trial court acted properly in finding Hogar was a successful litigant within the meaning of section 1021.5.

V

■ Next, the agency argues the trial court erred in not reducing the fee award to account for the fact Hogar pursued a number of claims which were not successful and that its reimbursement claim was only partially successful. The agency argues the trial court should have applied a negative multiplier to the lodestar amount and in any event excluded hours spent on unsuccessful matters. We find no abuse of discretion.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." (*Hensley v. Eckerhart* (1983) 461 U.S. 424, 435 [76 L.Ed.2d 40, 103 S.Ct. 1933].)

The principle that attorney fees should not be reduced solely because a litigant did not succeed on all claims or theories is based on the practical reality that "it is impossible for an attorney to determine before starting work on a potentially meritorious legal theory whether it will or will not be accepted by a court years later following litigation. It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right. To reduce the attorneys' fees of a successful party because he did not prevail on all his arguments, makes it the attorney, and not the defendant, who pays the cost of enforcing that public right." (*Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 273 [237 Cal.Rptr. 269].)

It is only when a plaintiff has achieved limited success, or has failed with respect to distinct and unrelated claims, that a reduction from the lodestar is appropriate. (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 250 [261 Cal.Rptr. 520].) However, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his [or her] attorney's fee reduced simply because the [trial] court did not adopt each contention raised." (*Hensley v. Eckerhart, supra,* 461 U.S. at p. 440.)

Here, given the long-term impact of the agency's amendment to the tax sharing agreement and the significant amount of reimbursement Hogar obtained, the trial court could reasonably find Hogar had achieved excellent results. Moreover, because all of Hogar's claims were related to its contention the Housing Fund had not been properly reimbursed, it had standing to assert those claims, and the statute of limitations had not expired, the trial court was not required to segregate the claims between those upon which Hogar was successful and those on which the agency prevailed. Moreover, given the overall results achieved and the relationship between the claims asserted, the trial court was not required to reduce the lodestar amount.[4]

---

[4] Hogar has asked that we take judicial notice of a 2006 report prepared by the California Redevelopment Agency with respect to the use of low- and moderate-income housing funds by local redevelopment agencies. Because the report was not considered by the trial court, we decline to do so.

## VI

In its cross-appeal, Hogar argues the trial court's award of attorney fees is deficient in three respects: the order fails to award attorney fees incurred before the August 1998 complaint was filed; the order fails to fully compensate Hogar for fees incurred on its motion for attorney fees; and the order fails to provide Hogar with a multiplier to account for the complexity of the case and the results Hogar achieved.

We agree with Hogar the fee award needs to be corrected to provide Hogar with fees incurred following the date of the tolling agreement. We also agree Hogar should receive the full amount incurred in prosecuting its motion for fees. However, we find no abuse of discretion in the trial court's unwillingness to award a multiplier.

### A. Precomplaint Attorney Fees

The trial court did not award Hogar any of the attorney fees it incurred before it filed its complaint in August 1998. The trial court believed it did not have any authority to do so. The trial court recognized there was some incongruity with this determination and its finding that Hogar's precomplaint activities prompted the agency and the county to amend their tax sharing agreement.

 We agree with the trial court there was some incongruity in its decisions. However, we do not agree that under section 1021.5 Hogar was prevented from being awarded any attorney fees incurred before the complaint was filed. We note that by its terms section 1021.5 does not expressly prevent the award of precomplaint attorney fees and that in other statutory contexts precomplaint attorney fees have been permitted. (See *La Mesa-Spring Valley School Dist. v Otsuka* (1962) 57 Cal.2d 309, 315–318 [19 Cal.Rptr. 479, 369 P.2d 7] [prelitigation fees permitted in eminent domain action under section 1255a].) We also note the catalyst theory contemplates a successful litigant will have engaged in precomplaint negotiation with its adversary. (See *Graham, supra,* 34 Cal.4th at p. 560.) On the other hand, in most cases the connection between such precomplaint litigation activity and the outcome of the litigation will not be as strong as the connection between the result and postcomplaint activity. Hence when a successful litigant seeks to recover precomplaint litigation expenses, the litigant will, as a practical matter, bear a heavier burden of demonstrating how that activity contributed to the success of the litigation.

Here, as to activity that occurred after the date of the tolling agreement, Hogar met its burden. As we noted both with respect to the statute of

limitations and as a practical matter, the litigation commenced no later than the date of the tolling agreement and Hogar should be permitted to recover fees it incurred after that date. Hence as to such fees the order must be reversed.

## B. *Attorney Fees Incurred in Prosecuting Motion for Fees*

In what appears to be a clerical error, the trial court included some but not all of the attorney fees Hogar incurred in prosecuting its attorney fees award. Absent unusual circumstances, Hogar was entitled to recover compensation for all the hours its attorneys spent in prosecuting the attorney fees motion. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 [186 Cal.Rptr. 754, 652 P.2d 985].) Thus on remand the trial court must award Hogar all the fees it incurred in prosecuting its fee motion, unless the agency can demonstrate some reason they should not be awarded.

## C. *Multiplier*

Finally, Hogar contends that in addition to the lodestar amount, the trial court should have applied a multiplier to increase the amount of its fee award.

The award of a multiplier is in the end a discretionary matter largely left to the trial court. Indeed, it was in the context of discussing and affirming a trial court's refusal to amplify an attorney fees award in *Serrano v. Priest* (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303], that the court stated: "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' "

Here, we agree with Hogar this litigation was challenging and complex. We also agree that its attorneys have been compelled to wait a lengthy period of time to recover their fees and these factors might support an award of a multiplier. (*Serrano v. Priest, supra,* 20 Cal.3d at p. 49.) However, we also note the overwhelming bulk of Hogar's fees were incurred *after* the agency and county amended their tax sharing agreement. While counsel's efforts after the tax sharing agreement was amended resulted in an additional $1.35 million reimbursement to the Housing Fund, we cannot say the trial court abused its discretion in effectively limiting Hogar's attorney fees to something approaching 50 percent of the product of those efforts.

## DISPOSITION

The trial court's order is reversed insofar as it fails to provide compensation for attorney fees incurred after December 20, 1997, and for all attorney fees incurred in prosecuting the motion for attorney fees. As to those issues, the order is reversed for further proceedings consistent with the view we have expressed. In all other respects, the order is affirmed.

Hogar to recover its costs of appeal.

Nares, J., and McDonald, J., concurred.

On January 10, 2008, the opinion was modified to read as printed above.