[No. A091298. First Div. Dist. Two. May 21, 2001.]

JACK L. GILLILAND et al., Plaintiffs and Appellants, v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Respondent.

**Counsel**

McCutchen, Doyle, Brown & Enersen, John R. Reese, Ross E. Campbell and Katharine L. West for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Carlos Ramirez, Assistant Attorney General, Vivien Hara Hersh and Jane Zack Simon, Deputy Attorneys General, for Defendant and Respondent.

**Opinion**

**LAMBDEN, J.**—Doctor Jack L. Gilliland (Gilliland) and Jose Rivera (Rivera) appeal from the denial of their petition for writ of administrative mandamus. Ron Joseph (Joseph), the Executive Director of the Medical Board of California and Acting Director of the Department of Consumer Affairs, charged Gilliland and Rivera with violating Business and Professions Code section 805[1] because they filed a late report of another doctor's suspension/termination. The question before us is whether the Medical Board of California (Board) has jurisdiction and authority to assess and impose a civil penalty pursuant to the Administrative Procedure Act (APA; Gov. Code, § 11400 et seq.). The trial court ruled that it did, but we disagree. We hold that the statute specifies that the action must be brought by the Attorney General (§ 805, subd. (h)), and since the Attorney General is only a party in an action in court, the Board did not have jurisdiction to impose a penalty under this statute in an administrative proceeding.

### Background

The facts underlying this appeal are not in dispute. The Permanente Medical Group (TPMG) suspended and terminated the employment of a physician on January 6, 1997, after determining that he had conducted an inappropriate and offensive examination of a patient. Gilliland, TPMG's physician in chief, and Rivera, TPMG's medical facility administrator, had a statutory duty to file a report regarding this adverse action to the Board within 15 days of the physician's suspension (§ 805, subd. (b)). They did not file the required report until April 9, 1997.

On October 5, 1998, Joseph, acting in his dual capacity as Executive Director of the Medical Board and as Acting Director of the Department of Consumer Affairs, filed a "Notification of Violation and Imposition of Civil Penalty" (notification) against Gilliland and Rivera. The notification stated

---

[1] All further unspecified code sections refer to the Business and Professions Code.

that the Board was imposing a fine of $5,000 against them for failing to file a timely report regarding the suspension and termination of the physician and for Rivera's failure to sign the report.

Gilliland and Rivera filed a timely notice of defense and requested an administrative hearing. After an administrative hearing on January 11, 1999, the administrative law judge issued a proposed decision on March 2, 1999, ruling that pursuant to section 805, subdivision (h), the matter must be brought in the superior court and therefore the Board could not impose the civil penalty itself in an administrative proceeding brought under the APA. The administrative law judge ruled that she lacked subject matter jurisdiction, and ordered the notification dismissed.

The Division of Medical Quality of the Medical Board (Division) issued a notice of nonadoption of proposed decision, and held a hearing on its nonadoption. The Division ruled that the Board's action was lawful and appropriate, and sustained the notification.

Gilliland and Rivera filed a petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5, seeking to vacate the decision after nonadoption on the grounds that the Board lacked jurisdiction to impose penalties and the action was barred by the statute of limitations. The trial court denied the writ, determining that the Board's "factual findings and legal conclusions are supported by the weight of the evidence and the law, and that [the Board] has not abused its discretion."

Gilliland and Rivera filed a timely notice of appeal.

DISCUSSION

I. *Jurisdiction*

Gilliland and Rivera contend that the Board did not have jurisdiction to assess and impose a civil penalty pursuant to section 805, subdivision (h). The Board asserts that it did have authority to impose the penalty under the statute. Section 805, subdivision (h) provides: "A failure by the administrator of any peer review body or the chief executive officer or administrator of any health care facility who is designated to transmit a report pursuant to this section whether or not the failure is intentional is punishable by a civil penalty not exceeding five thousand dollars ($5,000) per violation payable to the board with jurisdiction over the licensee in any action brought by the Attorney General."

With regard to the question of jurisdiction, none of the essential underlying facts is disputed. The only issue on appeal is one of law. Accordingly,

the standard of review is de novo. (See, e.g., *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

■ The rules regarding statutory construction are well established: " ' " " 'A statute must be construed "in the context of the entire statutory [scheme] of which it is a part, in order to achieve harmony among [its] parts." [Citation.]' " ' " (*O'Brien v. Dudenhoeffer* (1993) 16 Cal.App.4th 327, 332 [19 Cal.Rptr.2d 826].) However, " ' "[i]t is a prime rule of construction that the legislative intent underlying a statute [or statutes] must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. [Citation.]" ' " (*Ibid.*)

■ The issue raised by this appeal is whether section 805, subdivision (h) permits the Board to impose penalties in an administrative proceeding conducted under the APA (Gov. Code, § 11400 et seq.) or whether the statute only permits penalties to be imposed in a court action brought by the Attorney General. Gilliland and Rivera contend that "action" means a court action while the Board maintains that "action" includes in its definition administrative proceedings.

In support of their definition of "action," Gilliland and Rivera cite section 22 of the Code of Civil Procedure, which states: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." This definition does not include administrative proceedings since it expressly limits the definition of an action to a proceeding "in a court of justice." Moreover, section 23 of the Code of Civil Procedure provides: "Every other remedy is a special proceeding."[2]

The Legislature, according to Gilliland and Rivera, has defined hearings conducted by agencies pursuant to the APA as "adjudicative proceedings," not "actions." (Gov. Code, § 11405.20 [" 'Adjudicative proceeding' means an evidentiary hearing for determination of facts pursuant to which an agency formulates and issues a decision."]; see also *id.*, §§ 11405.60 ["[T]he agency that is taking action is a party and the agency that is conducting the adjudicative proceeding is not a party"], 11415.10, subd. (a) ["The governing procedure by which an agency conducts an adjudicative proceeding is

---

[2]Section 20 of the Code of Civil Procedure specifies: "Judicial remedies are such as are administered by the Courts of justice, or by judicial officers empowered for that purpose by the Constitution and the statutes of this State." "These remedies are divided into two classes: [¶] 1. Actions; and, [¶] 2. Special proceedings." (*Id.*, § 21.)

determined by the statutes and regulations applicable to that proceeding"], 11415.60, subd. (a) ["An agency may formulate and issue a decision by settlement, pursuant to an agreement of the parties, without conducting an adjudicative proceeding . . . ."].)

The language of other statutes, Gilliland and Rivera argue, also supports excluding administrative proceedings from the definition of action. When the Legislature has intended the Board to conduct adjudicative proceedings, it has expressly provided the Board with authority to act under the APA. (See, e.g., Bus. & Prof. Code, §§ 2225.5, subd. (e) ["Imposition of the civil penalties [related to failing to release medical records] shall be in accordance with the Administrative Procedure Act . . . ."], 2230, subd. (a) ["All proceedings against a licensee for unprofessional conduct . . . shall be conducted in accordance with the Administrative Procedure Act"], 2292, subd. (d) [Division of Medical Quality "may hold a hearing in accordance with the provisions of the Administrative Procedure Act" to determine whether reasonable cause exists to order a physician to submit to a competency examination], 805.1 [authorizing Board to review information regarding disciplinary action taken against a physician in a subsequent proceeding conducted under the APA]; Gov. Code, §§ 11372, 11373 [stating that proceedings relating to physician discipline shall be conducted pursuant to the APA].)

In contrast, Gilliland and Rivera assert, section 805 neither provides for the discipline of physicians or surgeons nor is it part of the Medical Practice Act. They assert that this is compelling evidence that the Legislature did not intend section 805, subdivision (h) to be enforced in an administrative proceeding. Rather, the Legislature specified that the Attorney General must bring an action for the penalty in a court of law.

The case law also, according to Gilliland and Rivera, supports a definition of "action" that does not include administrative proceedings. (*Bold v. Board of Medical Examiners* (1933) 133 Cal.App. 23, 25 [23 P.2d 826] ["The proceeding before [the Board of Medical Examiners] is not a civil action . . . ."]; *Ciani v. San Diego Trust & Savings Bank* (1994) 25 Cal.App.4th 563, 574-576 [30 Cal.Rptr.2d 581] (*Ciani*) [Code Civ. Proc., § 1021.5 provides that attorney fees may only be awarded pursuant to this section when the litigant's "action" conferred a substantial benefit. The court held that fees cannot be awarded in administrative proceedings unless the administrative proceedings were useful and necessary predicates to the resolution of a lawsuit, since the word "action" required that a court action confer a substantial benefit.]; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557] [A "bank[] setoff is not a 'proceeding in a court of justice' " and therefore is not an "action" as set

forth in Code Civ. Proc., § 22.]; *Triad Data Services, Inc. v. Jackson* (1984) 153 Cal.App.3d Supp. 1, 12-13 [200 Cal.Rptr. 418] [presenting claim to Labor Commissioner outside a court of law did not commence "action"].)

Gilliland and Rivera acknowledge that one court opinion has included administrative proceedings in its definition of "action." Division One of the Fourth District, in *Best v. California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1456-1458 [240 Cal.Rptr. 1] (*Best*), stated that "action" encompasses nonjudicial actions. However, we are not aware of any court that has followed this interpretation. Moreover, this same division of the Fourth District subsequently stated in *Ciani* that the definition of "action" in *Best* could be considered dictum and was not shared by the dissent in *Best* or the view of the *Ciani* court. (*Ciani, supra,* 25 Cal.App.4th at pp. 575-576 & fn. 10.)

The Board not only cites the *Best* opinion, but adds that it has the authority to impose a penalty as long as its decision is subject to judicial review. The Board has both judicial and legislative power. (*McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 362 [261 Cal.Rptr. 318, 777 P.2d 91] (*McHugh*).) Similarly, the Legislature reviewed the APA in 1995 to make the new APA, which became operative on July 1, 1997, broader in the respect that it vested administrative agencies with greater power to adjudicate matters within their regulatory function.

The Board points out that it is a state agency within the Department of Consumer Affairs (§ 2001) and it is charged with the duty to protect the public against incompetent, impaired, or negligent physicians. In 1987, the Legislature enacted section 805, requiring specified hospital personnel to file a report with the Board when the hospital takes adverse actions against a physician's staff privileges. Section 805, subdivision (b)(3) requires that the specified hospital personnel file the report within 15 days after the effective date of the denial, termination, restriction, resignation or leave of absence. Similarly, this provision mandates that the report shall be filed within 15 days following the imposition of summary suspension of staff privileges, membership, or employment, if the summary suspension remains in effect for a period in excess of 14 days. The failure to file is punishable by a civil penalty not to exceed $5,000 per violation, which is to be paid to the Board. (§ 805, subd. (h).)

The above action, the Board maintains, falls within the Board's regulatory authority. Section 321 provides: "Whenever it appears to the director that the interests of the consumers of this state are being damaged, or may be damaged, by any person who engaged in, or intends to engage in, any acts or

practices in violation of any law of this state, or any federal law, the director or any officer or employee designated by the director, or the Attorney General, may commence legal proceedings in the appropriate forum to enjoin such acts or practices and may seek other appropriate relief on behalf of such consumers." Here, the Board asserts, Gilliland and Rogers failed to comply with an important consumer protection law and Joseph, as both Acting Director of the Department of Consumer Affairs and as Executive Director of the Board, had standing and authority to commence legal proceedings to enforce section 805. Since the notification complied with all due process requirements, the Board asserts it had jurisdiction.

The assessment and adjudication of a penalty under section 805, the Board maintains, are to be made under the APA. Under the APA, a " '[d]ecision' means an agency action of specific application that determines a legal right, duty, privilege, immunity, or other legal interest of a particular person." (Gov. Code, § 11405.50, subd. (a).) Further, "[t]he governing procedure by which an agency conducts an adjudicative proceeding is determined by the statutes and regulations applicable to that proceeding. If no other governing procedure is provided by statute or regulation, an agency may conduct an adjudicative proceeding under the administrative adjudication provisions of the Administrative Procedure Act." (*Id.*, § 11415.10, subd. (a).)

The Board contends that under the above provision, unless the statute specifically prohibits the use of the APA or expressly provides for a different procedure, the Board may use the APA for its administrative factfinding function. Since section 805 does not identify a specific procedure for determining the penalty, the Board asserts that it has the discretion to determine the appropriate, lawful forum.

Gilliland and Rivera counter that section 11415.10, subdivision (a) is a procedural statute; it does not provide the Board with jurisdiction. We agree. Once it is determined that the agency has jurisdiction and the statutes and regulations do not specify a particular proceeding, this provision provides the agency with the authority to follow any of the proceedings consistent with the APA. The question here is whether section 805, subdivision (h) specifies a "governing procedure" when it provides that a penalty may be assessed in "any action brought by the Attorney General."

The Board also argues against limiting "action" to only court action because the statutes have not used "action" in that limited sense. Government Code section 11405.60 defines "party" as including the agency that is "taking action, the person to which the agency action is directed." Government Code section 11425.10, subdivision (a)(1) and (2) provides for notice

to the person to whom the "agency action" is directed. Similarly, section 11529, subdivision (e)(1), of the Government Code, which relates to the issuance of interim orders of suspension of health care licenses, refers to the likelihood that the petitioner will prevail in "the underlying action."

Further, the Board stresses, the Business and Professions Code and the regulations relating to medical professionals repeatedly refer to actions brought under the APA. (See, e.g., §§ 101.6, 141, 492, 526, 527, 822, 823, 2004, 2234 [referring to disciplinary "action" against a license]; and see § 7.5 ["[a]ny action" a board is permitted to take following the criminal conviction of a licensee]; § 129, subd. (b) ["administrative action" and "final action" taken on complaints filed with licensing boards]; § 140 [licensing board can take disciplinary "action" against a licensee for failure to maintain records for cash wage transactions]; § 2313, subd. (b) [Board must report annually, among other things, "[t]he total number and types of actions" taken]; see also §§ 2235, 326, 490, 2313, subd. (c).)

In contrast, the Board maintains, the Legislature specifies "civil action" when it wishes to limit the forum to a court. Thus, for example, the Legislature requires that penalties related to false advertising be recovered in a "civil action." (§§ 17535.5, 17536.) Similarly, with regard to provisions relating to restraint of trade, the Legislature has specified that violations of the law are to be enforced by "civil actions" or criminal proceedings. (§ 16754.) Violations of unfair competition provisions of law are subject to civil penalties to be assessed and recovered in a "civil action" in court. (§ 17206.)

As Gilliland and Rivera stress, the Board cites no authority to support its assertion that only "civil actions" and not "actions" mean court actions. The Code of Civil Procedure section 22 defines "action" and section 24 of this code specifies that an action may be civil and criminal. The Code of Civil Procedure does not identify adjudicative proceedings as an "action."

The numerous citations by the Board to the Legislature's use of "action" fail to take into account, Gilliland and Rivera argue, the distinction between using the word in its legal sense from using it in its ordinary, everyday sense. In its ordinary sense, "action" refers to "[c]onduct; behavior; something done; the condition of acting; an act or series of acts." (Black's Law Dict. (6th ed. 1990) p. 28, col. 1.) The legal definition of "action" is "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law[;] . . . [a]n ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (*Ibid.;* accord, Code Civ. Proc., §§ 20-22.)

The Legislature, Gilliland and Rivera maintain, uses the word "action" sometimes to signify the common law meaning of the word and at other times employs it to mean the legal definition. The context of the sentence generally makes it clear how "action" is being used. Thus, for example, the Board cited Government Code section 11405.60 and quoted the portion of the statute defining "party" as including the agency that is "taking action, the person to which the agency action is directed." However, the entire statute reads as follows: " 'Party' includes the agency that is taking action, the person to which the agency action is directed, and any other person named as a party or allowed to appear or intervene in the proceeding. If the agency that is taking action and the agency that is conducting the adjudicative proceeding are separate agencies, the agency that is taking action is a party and the agency that is conducting the adjudicative proceeding is not a party." When considering the entire statute, it becomes clear that the Legislature uses "taking action" in the ordinary sense and employs "adjudicative proceeding" for a factfinding hearing before an administrative law judge.

Similarly, Gilliland and Rivera assert, the Board points to the use of "disciplinary action" in the statutes (e.g., §§ 2230, 2227, 2234, 2004) to indicate that the Legislature intended "action" to include administrative proceedings. Disciplinary actions, the Board declares, are adjudicative hearings on revoking a certificate or license. Gilliland and Rivera counter that the Legislature is using "disciplinary action" in the everyday sense. Disciplinary action, they argue, does not refer to the actual administrative proceeding that *may* follow a "disciplinary action." The "disciplinary action" is an event separate from the administrative proceeding and may merely be the triggering event for an administrative hearing. We agree that the use of "disciplinary action" lends little, if any, support to the assertion that the legal definition of action is an administrative proceeding.

Indeed, one statute cited by the Board, Gilliland and Rivera argue, undermines its argument that "action" includes administrative proceedings. The Board cites section 2313, subdivision (c), which reads in pertinent part: " 'Action,' for purposes of this section, includes proceedings brought by, or on behalf of, the division against licensees for unprofessional conduct. . . ." If action generally meant any proceeding, Gilliland and Rivera assert, there would be no need for this statute.

Although many of the statutes cited by the Board seem to be using the word action in its everyday use and therefore shed little light on the legal definition of action, there are instances when the Legislature has used the word "action" to refer to an adjudicative proceeding. Government Code section 11529, subdivision (e) provides: "Consistent with the burden and

standards of proof applicable to a preliminary injunction . . . , the administrative law judge shall grant the interim order where . . . [¶] (1) There is a reasonable probability that the petitioner will prevail in the underlying action."[3]

In addition, section 140 provides: "Any board, as defined in Section 22, which is authorized under this code to take disciplinary action against a person who holds a license may take disciplinary action upon the ground that the licensee has failed to record and preserve for not less than three years, any and all cash transactions involved in the payment of employee wages by a licensee. Failure to make these records available to an authorized representative of the board may be made grounds for disciplinary action. In any action brought and sustained by the board which involves a violation of this section and any regulation adopted thereto, the board may assess the licensee with the actual investigative costs incurred, not to exceed two thousand five hundred dollars ($2,500). Failure to pay those costs may result in revocation of the license. Any moneys collected pursuant to this section shall be deposited in the respective fund of the board."

We agree with Gilliland and Rivera that the context of most of the provisions cited by the Board indicates that the Legislature was using the word "action" in the sense of "conduct" or the condition of acting. There are, however, clear inconsistencies. We, however, do not need to rely simply on the manner in which the statutes have generally used the word "action" to conclude that this word in section 805, subdivision (h) refers to a court action.

It is true that administrative agencies often have the authority to impose penalties or order restitution when it is *"reasonably necessary"* to effectuate its *"primary, legitimate regulatory purposes."* (*McHugh, supra,* 49 Cal.3d at pp. 372-374.) Although agencies do not have the power to issue writs of execution to enforce the judgment, they can generally ensure that the penalty or restitution will be paid under their regulatory power permitting them to revoke or suspend licenses (see, e.g., *Russell v. Miller* (1943) 21 Cal.2d 817, 818 [136 P.2d 318] [electrical contractor's license suspended until restitution paid]). In the situation before us, as the Board points out, it is responsible for the regulation and discipline of physicians and surgeons, and for enforcing the Medical Practice Act (§ 2000 et seq.) However, section 805, subdivision

---

[3]The original statute erroneously referred to "the court" rather than "the administrative law judge." (Former Gov. Code, § 11529, subd. (e), as amended by Stats. 1995, ch. 938 [correcting error].) However, the word "action" was not similarly changed. Gilliland and Rivera assert that this earlier error in wording indicates that the use of action to refer to an administrative proceeding in this statute is an anomaly and probably a product of sloppy drafting.

(h) sets forth penalties to be imposed against the administrators of health care entities and of peer review boards. In some cases these persons are not even licensees under the Board's jurisdiction. Indeed, that is the case here. Rivera, TPMG's medical facility administrator, is not a licensee under the Board's jurisdiction. Thus, it is unclear how the Board could enforce the penalty against him. Further, as Gilliland and Rivera assert, this contravenes the Board's claim that its enforcement of section 805 is *"reasonably necessary"* to effectuate its *"primary, legitimate regulatory purposes"* (*McHugh, supra,* at pp. 372-374).

Additionally, the language of the statute specifies that the action will be taken by the Attorney General. Here, it was the executive director of the Board rather than the Attorney General who sought to impose penalties against Gilliland and Rivera. The Board argues that Gilliland and Rivera waived raising this argument because they never raised this as a defense in the administrative proceeding or in the writ of administrative mandamus hearing. (See *Richmond v. Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 874 [242 Cal.Rptr. 184].) ■ However, it is well settled that when the issue raises a pure question of law, as jurisdiction does, we may consider the issue for the first time on appeal. (See, e.g., *Consolidated Theatres, Inc. v. Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 721 [73 Cal.Rptr. 213, 447 P.2d 325]; *Wilson v. Lewis* (1980) 106 Cal.App.3d 802, 805 [165 Cal.Rptr. 396]; *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].)

■ Even if the issue is not waived, the Board asserts that it has no merit because the Board sought to impose the penalty through its counsel, the Attorney General, and therefore the "action" was brought by the Attorney General. Further, section 2020 provides: "The Attorney General shall act as legal counsel for the board for any judicial and administrative proceedings and his or her services shall be a charge against it." The only role for the Attorney General under section 805, the Board asserts, is as the Board's attorney. Moreover, the statute requires that reports be filed with the Board, not the Attorney General.

Section 805, subdivision (h), does not state that the action is to be brought by the executive director or the Board. Rather, the clear language of the statute provides that the action is to be brought by the Attorney General. The Attorney General does not appear as a party in an administrative proceeding, but does appear as a party in a court hearing. Accordingly, this language indicates that the penalty can only be imposed in a court action when the Attorney General is the party, not merely counsel.

We hold that the clear language of section 805, subdivision (h), indicates that the penalty can be imposed in an action by the Attorney General in a

court of law.[4] Accordingly, the Board did not have the authority to impose a penalty pursuant to this statute.

## II. *Attorney Fees*

██ Gilliland and Rivera seek to recover attorney fees pursuant to Government Code section 800. Section 800 provides: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, except actions resulting from actions of the State Board of Control, where it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity, the complainant if he or she prevails in the civil action may collect reasonable attorney's fees, computed at one hundred dollars ($100) per hour, but not to exceed seven thousand five hundred dollars ($7,500), where he or she is personally obligated to pay the fees, from the public entity, in addition to any other relief granted or other costs awarded."

The statute provides for the award of reasonable attorney fees only if the administrative decision resulted from the arbitrary or capricious action of a public entity. (*Healdsburg Police Officers Assn. v. City of Healdsburg* (1976) 57 Cal.App.3d 444, 457 [129 Cal.Rptr. 216], overruled on other grounds in *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 181, fn. 9 [203 Cal.Rptr. 626, 681 P.2d 893].) "The phrase arbitrary or capricious encompasses conduct not supported by a fair or substantial reason [citation], stubborn insistence on following an unauthorized course of action [citation], and a bad faith legal dispute [citation]." (*Plumbing etc. Employers Council v. Quillin* (1976) 64 Cal.App.3d 215, 221 [134 Cal.Rptr. 332].) Attorney fees will not be awarded simply because the agency's action was erroneous, or

---

[4]Gilliland and Rivera also maintain that the Board's position is internally inconsistent in that it asserts that administrative proceedings are not civil actions for the purposes of the statute of limitations defense (Code Civ. Proc., § 340, subd. (1), but are actions for purposes of asserting jurisdiction under section 805, subdivision (h). There is no distinction between a civil action and an action under the Code of Civil Procedure, sections 22 and 24, according to Gilliland and Rivera, other than an "action" includes both a civil and a criminal action. The statute of limitations applies to all civil actions, but not to administrative proceedings. Thus, Gilliland and Rivera claim the "Board cannot have it both ways. Its administrative proceedings are either 'civil actions' or 'criminal actions,' or they are not 'actions' at all." Under this interpretation, the Board could impose penalties without being subjected to any time limits.

We conclude, however, that the Board's position is not really inconsistent in the respect that it claims the statute of limitations only applies to civil actions, which are court actions. Section 805, subdivision (h), according to the Board, applies to "actions," which include administrative proceedings. As explained *ante*, we are not persuaded by the Board's attempt to distinguish civil actions from actions in this manner.

even "clearly erroneous." (*Stirling v. Agricultural Labor Relations Bd.* (1987) 189 Cal.App.3d 1305, 1312 [235 Cal.Rptr. 56].)

Gilliland and Rivera assert that the Board acted in an arbitrary manner and in bad faith when it asserted that the statute of limitations did not apply because this was not a civil action, but it had jurisdiction under section 805, subdivision (h), because the word "action" included administrative proceedings. We disagree. We were not persuaded by the Board's argument that a "civil action" means a court action but the single word "action" includes an administrative proceeding. However, that does not mean its contention was wholly without merit and made in bad faith. This was a question of first impression, and the Board did not act arbitrarily or in bad faith in arguing that it had authority to impose a penalty pursuant to section 805, subdivision (h). Accordingly, we conclude that attorney fees should not be awarded.

## DISPOSITION

The judgment is reversed. No attorney fees are awarded pursuant to Government Code section 800. Gilliland and Rivera are awarded costs.

Kline, P. J., and Haerle, J., concurred.