[No. B204618. Second Dist., Div. Eight. May 16, 2008.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
STACEY P. et al., Real Parties in Interest

1410

**COUNSEL**

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, O. Raquel Ramirez and Ali R. Sabouri, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Law Office of Timothy Martella, Eliot Lee Grossman and Renelde Espinoza for Real Party in Interest Stacey P.

Children's Law Center of Los Angeles, Carol B. Gasa Kittler and Kenneth Ichiroku for Minor.

**OPINION**

**RUBIN, J.**—We issued an order to show cause to consider whether a juvenile court may dismiss a dependency petition, sua sponte and with no advance notice, at the conclusion of a detention hearing. We conclude that, barring exceptional and exigent circumstances not present in this case, it may not. Accordingly, we grant the petition for writ of mandate of the Los Angeles County Department of Children and Family Services (Department) to the extent it challenges such a dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2007, the Department detained then three-month-old Isabella L. and filed the dependency petition at issue in this writ proceeding.

At the time, five of Isabella's siblings and half siblings were dependents of the juvenile court pursuant to a petition the Department had filed 18 months earlier.[1] The five siblings were in placement with grandparents, the children's mother (mother) was receiving reunification services, and a contested 18-month review hearing (Welf. & Inst. Code, § 366.22) was scheduled to take place the following month.[2]

The dependency petition filed on Isabella's behalf alleged that (1) in June 2005, a then seven-month-old sibling of Isabella was found suffering from serious injuries caused by physical abuse, including a fractured rib, a fractured skull, retinal hemorrhages to both eyes, swelling to the head and bruises to the face, upper chest, right knee and left ankle, (2) Isabella's siblings were dependents of the court due to acts of domestic violence between mother and father, which took place in the siblings' presence, and (3) mother had failed to participate regularly in court-ordered counseling to address domestic violence issues.[3]

According to the detention report, mother claimed she no longer had a relationship with father, but the Department had doubts regarding the truth of the claim. The report noted that, when mother appeared for a visit, she had a black eye which she tried to conceal from the Department social worker. Mother claimed the bruise was caused when one of her children hit her with a toy. Mother advised that she had been taking two of her children to father for visits, but she was not sure if this was permissible.

The detention hearing took place on the same day the petition was filed. Mother's counsel argued that the allegations in the petition were not new, and that mother was "do[ing] her work" as required by her reunification plan. Mother's counsel asked that the court order Isabella released to mother. Counsel for Isabella joined in the request. Neither counsel asked the court to dismiss the dependency petition. Nonetheless, sua sponte and without prior notice, the juvenile court declared: "I'm going to dismiss this petition. I'm sorry. There is no current information in it, and the timing of it is really suspect. I mean, we have a contest[ed] [18-month review hearing for the older siblings] in two weeks. I really do not like this . . . ." Counsel for the Department objected to the dismissal, noting that "[i]t's a detention hearing . . . not an adjudication." Counsel also asked for a stay, which the court denied.

---

[1] For simplicity, the siblings and half siblings will be referred to collectively as siblings. Similarly, although Isabella's father is the father of only one of her siblings, we refer to him as father.

[2] All undesignated statutory references are to the Welfare and Institutions Code.

[3] Unless otherwise specified, all subsequent references to a dependency petition are to the petition filed on behalf of Isabella.

The Department filed a writ petition challenging the decisions to dismiss the dependency petition and to release Isabella to her mother. We issued an order to show cause limited to the question whether the juvenile court had authority to dismiss the petition, and we stayed the dismissal.

After we issued the order to show cause, Isabella's counsel filed a joinder in the Department's petition.[4] Mother filed a return, arguing that the court had authority to dismiss the petition, which she characterized as insufficient on its face. The Department filed a reply and an unopposed request for judicial notice, which we grant in part.[5]

## DISCUSSION

The question whether a court is authorized to perform a certain act is a purely legal question which entails construction of statutory language and application of legal principles. Therefore, we apply de novo review. (*Gilliland v. Medical Board* (2001) 89 Cal.App.4th 208, 211–212 [106 Cal.Rptr.2d 863]; *Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].)

---

[4] Isabella's counsel acknowledged supporting mother's request for Isabella's release at the detention hearing, but counsel's view changed "after further consideration and analysis."

[5] We take judicial notice of (1) the Legislative Counsel's Digest of Senate Bill No. 243 (1987–1988 Reg. Sess.) (Evid. Code, §§ 452, subd. (c), 459, subd. (a); see also *People v. Cruz* (1996) 13 Cal.4th 764, 795, fn. 6 [55 Cal.Rptr.2d 117, 919 P.2d 731] (dis. opn. of Anderson, J.) [discussing propriety of judicially noticing Legislative Counsel's Digest]; *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 31, 35 [34 Cal.Rptr.3d 520]); (2) the Legislative Counsel's Digest of Assembly Bill No. 1261 (2005–2006 Reg. Sess.) (Evid. Code, §§ 452, subd. (c), 459, subd. (a)); (3) Judicial Council Forms, forms JV-410 (rev. Jan. 1, 2007) (Findings and Orders After Detention Hearing), JV-412 (rev. Jan. 1, 2007) (Findings and Orders After Jurisdictional Hearing), JV-415 (rev. Jan. 1, 2007) (Findings and Orders After Dispositional Hearing), and JV-416 (rev. Jan. 1, 2007) (Dispositional Attachment: Dismissal of Petition With or Without Informal Supervision) (Evid. Code, §§ 452, subd. (h), 459, subd. (a)); and (4) California Judges Benchguide 100: Juvenile Dependency Initial or Detention Hearing (CJER rev. 2007) sections 100.36, 100.58 and 100.59, pages 100-41 to 100-43 and 100-58 to 100-66 (Evid. Code, §§ 452 (h), 459, subd. (a)). We notice the last two items for the sole purpose of establishing their contents, and not for the truth of the matters stated therein. (See *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1064 [31 Cal.Rptr.2d 358, 875 P.2d 73], overruled on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276 [63 Cal.Rptr.3d 418, 163 P.3d 106].)

We deny the request to take judicial notice of what the Department identifies as sections 3.10[1], 3.10[3] and 3.11 of an unspecified "California Judges Bench Guide." The material in question does not appear to be from any benchguide. Rather, it appears to be from an online course of the California Center for Judicial Education and Research (CJER). (See <http://www2.courtinfo.ca.gov/protem/courses/jdep/toc.htm> [as of May 16, 2008].) As the Department fails to adequately identify the material in question, we deny the request. We also note that the material does not add to the other material contained in the benchguide of which we take judicial notice.

■ No constitutional or statutory provision expressly states that juvenile courts may not dismiss a dependency petition, sua sponte and without notice, at a detention hearing.[6] However, as we now explain, when we consider the statutory scheme governing dependency proceedings—especially the provisions governing detention and jurisdiction hearings—we conclude the Legislature did not intend for courts to resolve jurisdictional questions in such a manner.

■ "Where, as here, the issue presented is one of statutory construction, our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.] If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citations.] Any interpretation that would lead to absurd consequences is to be avoided. [Citation.]" (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639], third brackets in original.)

■ When considering individual statutory provisions, we must keep in mind that a statute " ' " ' "must be construed 'in the context of the entire statutory [scheme] of which it is a part, in order to achieve harmony among [its] parts.' " ' " ' " (*Gilliland v. Medical Board, supra,* 89 Cal.App.4th at p. 212, original brackets; see also *In re David H.* (1995) 33 Cal.App.4th 368, 387 [39 Cal.Rptr.2d 313] [Welf. & Inst. Code provisions must be construed with reference to "whole system of dependency law, so that all parts may be harmonized"].)

■ We begin with section 319, the statute governing detention hearings. As mother correctly notes, this section does not expressly state that a court lacks authority to dismiss a petition at the detention hearing. This omission, however, is telling, especially considering that the statute does address the options available to a court at a detention hearing. Those are either to (1) order the child detained, or (2) order the child released to the parent or guardian. (§ 319, subds. (b), (d)(2).) Even where the court concludes there has been no "prima facie showing . . . that the child comes within Section 300," the only option referenced in the statute is the child's release. (§ 319, subd. (b); see also

---

[6] We refer to the sua sponte dismissal of a dependency petition without notice as a summary dismissal.

Cal. Rules of Court, rules 5.667–5.680 [rules governing detention hearings make no mention of dismissal].)

In contrast, section 356—which discusses the findings the juvenile court is required to make after hearing evidence at the *jurisdiction* hearing (the adjudication)—specifically references dismissal of the dependency petition. The section provides: "After hearing the evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Section 300 and the specific subdivisions of Section 300 under which the petition is sustained. If it finds that the minor is not such a person, *it shall order that the petition be dismissed* and the minor be discharged from any detention or restriction theretofore ordered. If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly." (§ 356, italics added; see also Cal. Rules of Court, rule 5.695(a)(1) [court may dismiss the petition at the disposition hearing].)

Thus, the statutory scheme appears to envision that the sufficiency of the dependency petition will be addressed at the adjudication, not at the detention hearing.[7] This makes perfect sense considering the limited purpose of the detention hearing and the schedule established by the Legislature for resolving both detention and jurisdictional issues.

 The detention hearing's purpose is reflected in section 315, which states the obvious—the juvenile court must conduct such a hearing "to determine whether the minor shall be further detained" or, conversely, released from custody. It says nothing about determining whether the dependency petition should be dismissed.

Aside from the specific statutory language, the chronological schedule established by the statutory scheme also militates against dismissal at the detention hearing. A detention hearing must take place within three court days after the child is detained. (See §§ 313, subd. (a) [dependency petition must be filed within 48 hours (excepting nonjudicial days) of detention], 315 [detention hearing shall take place no later than one judicial day after dependency petition is filed].) Considering these time constraints, the Department will often have little time to investigate all the relevant facts, marshal all the evidence, and still prepare a detention report and draft a petition. For these reasons, and because fundamental fairness *and the interests of the child*

---

[7] There is one limited exception. Section 333 provides that "[a]ny petition filed in juvenile court to commence proceedings pursuant to this chapter that is not verified may be dismissed without prejudice by such court." The statute does not specifically discuss the timing of such a dismissal. Presumably, it may be done at any time. This is understandable because the absence of a verification is a technical defect that is apparent on the face of the petition and is not subject to dispute. This section does not apply in this case.

require that the Department and the other parties receive advance notice and an opportunity to be heard before a dependency petition is dismissed, it is at odds with the statutory scheme for judges to summarily dismiss a petition in absence of clear legislative authorization.[8]

■ Our conclusion is bolstered because no interested party will suffer significant prejudice if the sufficiency of the petition is deferred until the adjudication hearing. In the interim, even assuming the dependency petition is insufficient, the child will have been released to the parents.[9] (See § 319, subd. (b) [child must be released if there has been no prima facie showing, that child comes within § 300].) Although we understand parents are likely to be uneasy that a jurisdiction hearing is still in the offing, fundamental fairness and sound procedure, as well the need to protect potentially endangered children, should take precedence. In addition, the parents are protected by the statutory right to a speedy jurisdiction hearing. (See § 334 [adjudication must take place within 30 days after petition is filed, unless child was detained when petition was filed, in which case adjudication must take place within 15 days of filing of petition].) And, if parents wish to challenge the legal sufficiency of the petition sooner, they can raise the issue by way of a noticed motion. (See *In re Fred J.* (1979) 89 Cal.App.3d 168, 176–177 [152 Cal.Rptr. 327] [parent may make a "motion akin to a demurrer" to test sufficiency of dependency petition]; Super. Ct. L.A. County, Local Rules, rule 17.15(d) [parent or guardian may "file a demurrer [which must be set for hearing] to challenge the legal sufficiency of a dependency petition that alleges facts which, even if determined to be true, (a) are not sufficient to state a cause of action, or (b) are not sufficiently clear or precise for the party to prepare a defense"].)

■ Although not cited by the juvenile court at the detention hearing or by mother in her return to the Department's writ petition, we note that section 390 contains a general dismissal provision. It provides: "A judge of the juvenile

---

[8] The importance of notice to *all* parties is illustrated by the facts of this case. As noted above, at the detention hearing, Isabella's counsel joined in mother's request that Isabella be returned to mother. However, after the Department filed its writ petition, Isabella's counsel filed a joinder in that petition, explaining that counsel's view had changed "after further consideration and analysis." Meaningful "consideration and analysis" are possible only where a party is on notice that an issue will be considered. The notice is particularly important in this context because ordinarily, counsel for the child will be appointed at the detention hearing and will not have had an opportunity to consider or analyze jurisdictional issues in advance of the hearing. (See § 317, subds. (c)–(e) [stating that juvenile court must appoint counsel to represent the child at the detention hearing and at all subsequent hearings, and specifying duties of counsel, including duty to investigate relevant facts].)

[9] Thus, in this case, after the Department's counsel objected to the summary dismissal at the detention hearing, the juvenile court stated that it "want[ed] [Isabella] returned to her mom." This objective was accomplished by ordering Isabella released to mother. It was not necessary to dismiss the petition.

court in which a petition was filed, at any time before the minor reaches the age of 21 years, may dismiss the petition or may set aside the findings and dismiss the petition *if the court finds* [1] *that the interests of justice and the welfare of the minor require the dismissal, and* [2] *that the parent or guardian of the minor is not in need of treatment or rehabilitation.*" (Italics added.) Notwithstanding the obvious breadth, nothing in the statute or its legislative history suggests the Legislature intended for this provision to be invoked in summary fashion at a detention hearing. Before a juvenile court may invoke this provision, it must make certain findings. Absent advance notice and opportunity for briefing, argument, and the presentation of evidence by the parties, the juvenile court is not in a position to make the requisite findings regarding the interests of justice, and the welfare and needs of the child at the initial detention hearing. Thus, in the ordinary course, section 390 is not an appropriate vehicle for the summary dismissal of a dependency petition at a detention hearing. This may explain why the juvenile court did not purport to rely on it or make the findings required by that section when it summarily dismissed the petition in this case.[10]

Although there is no case addressing the specific question before us, our conclusion is consistent with the analysis of some commentators. Thus, a leading practice guide explains: "If the social services agency fails to meet its burden to make a prima facie showing of jurisdiction, the child must be returned to the parent or guardian. *The petition is not dismissed, however, since the detention hearing is not a jurisdiction hearing.* The fact that the agency fails to meet its burden at a detention hearing held only a few days after it becomes involved in the case does not mean the agency will not be able to prove jurisdictional grounds at a full jurisdiction hearing held weeks later after it has had time to conduct a more complete investigation. As such, unless all parties, *including the agency*, agree to a dismissal of the matter at the detention hearing, *the court lacks the authority to dismiss the petition and a jurisdiction hearing must be set . . . .*" (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2007 ed.) § 2.83[6], p. 2-202, italics added, citation omitted.)

---

[10] Although we have difficulty envisioning such a situation, there may be an exceptional case where a court at a detention hearing may be in a position to make the findings required under section 390. Therefore, we are not saying that a court is without jurisdiction in its fundamental sense to summarily dismiss a dependency petition at a detention hearing. However, even where a proper situation presented itself, there would have to be exigent circumstances to warrant dispensing with notice. (See *People v. Gonzales* (1965) 235 Cal.App.2d Supp. 887, 891–892 [46 Cal.Rptr. 301] ["Even in the absence of a statutory requirement of notice, if the rights of an adverse party are likely to be affected, requirement of a notice of motion is a basic concept to be observed, absent a legal showing of an emergency justifying its dispensation."].)

Similarly, the California judges benchguide for juvenile proceedings states: Unless the Department "and the child otherwise agree to a dismissal of the petition, a jurisdiction hearing must still be held." (Cal. Judges Benchguide 100: Juvenile Dependency Initial or Detention Hearing, *supra*, § 100.36, p. 100-42.)

We also observe that the Judicial Council form designed for use by judicial officers to make findings and orders after a detention hearing contains no option for dismissal of the petition. (See Judicial Council Forms, form JV-410 (rev. Jan. 1, 2007) (Findings and Orders After Detention Hearing).) In contrast, the Judicial Council form designed for judicial findings and orders after a *jurisdictional* hearing provides a space for dismissal. (See Judicial Council Forms, form JV-412 (rev. Jan. 1, 2007) (Findings and Orders After Jurisdictional Hearing).)

■ Finally, as already noted, rule 17.15(d) of the Los Angeles County Superior Court Local Rules specifically provides a mechanism for a parent or guardian to "file a demurrer to challenge the legal sufficiency of a dependency petition that alleges facts which, even if determined to be true, (a) are not sufficient to state a cause of action, or (b) are not sufficiently clear or precise for the party to prepare a defense." (See also *In re Fred J., supra*, 89 Cal.App.3d at pp. 176–177 [parent may make a "motion akin to a demurrer" to test sufficiency of dependency petition].) The local rule requires that the motion be in writing and that the matter be set for hearing. At a minimum, permitting a court to summarily dismiss a petition at the detention hearing is inconsistent with the spirit of this local rule.

Citing the principle that "[a]ll courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice" (*In re Amber S.* (1993) 15 Cal.App.4th 1260, 1264 [19 Cal.Rptr.2d 404]), mother argues that, since section 319 does not forbid summary dismissal, the juvenile court has the inherent power to do so. We disagree.

Mother relies on *In re Amber S., supra*, 15 Cal.App.4th at page 1264, where the Court of Appeal explained: "All courts have inherent powers which enable them to carry out their duties and ensure the orderly administration of justice. The inherent powers of courts are derived from article VI, section 1 of the California Constitution and are not dependent on statute. [Citations.] These powers entitle courts to ' ". . . adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute or by rules adopted by the Judicial Council." [Citation.]' [Citation.] Thus, a trial court has the inherent authority to create a new form of procedure in a particular case, where justice demands it. [Citations.] ' "The . . . power arises from necessity where, in the absence of any previously established procedural rule, rights would be lost or the court would be unable to function." [Citation.]' [Citation.]" (Ellipses and second

and fifth brackets in original; see also *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203].)

"Although broad in scope, this inherent power to fashion novel procedures is not unlimited." (*In re Amber S., supra,* 15 Cal.App.4th at p. 1264.) Whatever inherent authority a judge possesses may not be exercised in a manner that is "inconsistent with or which contravene[s] a statute." (*Travelers Casualty & Surety Co. v. Superior Court* (2005) 126 Cal.App.4th 1131, 1144 [24 Cal.Rptr.3d 751].)

■ How do we determine whether a court's exercise of authority is "inconsistent" with a statute? In an analogous context, a panel of the First Appellate District offered the following explanation: "[W]hen evaluating whether a rule of court is 'not inconsistent with statute' within the meaning of the California Constitution, a court must determine the Legislature's intent behind the statutory scheme that the rule was intended to implement and measure the rule's consistency with that intent. [Citation.]" (*California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 25–26 [46 Cal.Rptr.2d 44].) This exercise requires more than a determination that it is "impossible to give both concurrent effect." (*Ibid.*)

■ As we have explained, the applicable statutory scheme reflects that the Legislature did not intend for courts to summarily dismiss a dependency petition at a detention hearing. Dismissal under the supposed exercise of inherent authority would not only be inconsistent with the applicable statutory scheme, it would also run counter to notions of fundamental fairness. The sufficiency of a dependency petition should be considered at the jurisdictional hearing or, if proper notice and opportunity for hearing are afforded, at an earlier date otherwise permitted by law.[11]

---

[11] Mother cites several civil cases to support her claim that the juvenile court has inherent authority to *summarily* dismiss a petition at a dependency hearing. Because they are not dependency cases, we find those cases unhelpful. More significantly, all involve a judicial response to a duly noticed motion. (See *Andrews v. Joint Clerks etc. Committee* (1966) 239 Cal.App.2d 285 [48 Cal.Rptr. 646] [after plaintiffs' first action was stayed pending arbitration, plaintiffs filed second action seeking same relief and moved to disqualify judge under Code Civ. Proc., §170.6; court rejected disqualification motion as second action was continuation of the first, and it sustained, without leave to amend, a duly noticed demurrer to second action, adding (apparently unnecessarily in light of the demurrer ruling) that it was striking and dismissing second "sham" pleading on its own motion]; *Estate of King* (1953) 121 Cal.App.2d 765 [264 P.2d 586] [probate court was justified in granting a duly noticed motion to strike objections to accounting]; *Neal v. Bank of America* (1949) 93 Cal.App.2d 678 [209 P.2d 825] [court did not abuse its discretion in granting party's motion (apparently in writing) to strike amended complaint which added virtually nothing to original complaint to which court had previously sustained demurrer with leave to amend].) None of these cases implicates the serious fairness problem inherent in summarily dismissing a dependency petition at the detention hearing.

Mother claims the dependency petition in this case was "legally insufficient on its face," suggesting juvenile courts should have the discretion to summarily dismiss such petitions. First, as a pleading matter, although the petition is far from a model of legal drafting, it does not appear to be "legally insufficient on its face." As discussed above, the petition alleges that three-month-old Isabella was at risk because (1) in June 2005, her then seven-month-old sibling was found suffering from very serious injuries caused by physical abuse, (2) Isabella's siblings were dependents of the court due to acts of domestic violence between mother and father, which took place in the siblings' presence, and (3) mother had failed to participate regularly in court-ordered counseling to address domestic violence issues. These allegations on their face come within section 300, subdivision (j) (sibling abused or neglected and child is at risk). Whether these allegations involve facts that are too remote in time to suggest Isabella was at risk may be subject to debate, but for that the juvenile court needs to hear evidence. (See § 300, subd. (j) [in determining whether child should be declared dependent under sibling abuse provision, "[t]he court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child"].)[12] Second, even where a petition is insufficient on its face, there is no compelling reason why the issue demands resolution without formal notice and a full opportunity to be heard. (See Super. Ct. L.A. County, Local Rules, rule 17.15(d); *In re Fred J., supra,* 89 Cal.App.3d at pp. 176–177.)

## DISPOSITION

Although the petition for writ of mandate filed by the Department also challenged the release of Isabella L. to mother, our order to show cause was expressly limited to the propriety of the respondent court's dismissal of the dependency petition. Accordingly, the petition for writ of mandate is granted in part as follows: The respondent court is directed to vacate that portion of its December 27, 2007 order dismissing the dependency petition filed on behalf of Isabella L. In all other respects, the petition is denied.

Cooper, P. J., concurred.

---

[12] The allegations contained in Isabella's petition were similar to those contained in the petition filed on behalf of her siblings 18 months earlier. Those allegations (sustained with respect to the siblings) were enough to keep her siblings in placement pending a contested 18-month review hearing (which had not yet taken place when the court summarily dismissed the present petition). Although we refer to the other petition, we do not address its merits nor the merits of the petition involving Isabella. We point out the similarities in the two petitions only to show that the alleged deficiencies in the present petition were far from clear.

**FLIER, J.,** Dissenting.—I respectfully dissent.

The order of the court dismissing the petition was not in conflict with any statute. Absent statutory prohibition, the court has inherent power to dismiss the petition in an appropriate case. I find this to be such a case.

The petition of real parties in interest for review by the Supreme Court was denied July 30, 2008, S164658. George, C. J., did not participate therein.