[No. D055956. Fourth Dist., Div. One. Mar. 30, 2010.]

In re ANDREW A., a Person Coming Under the Juvenile Court Law.
IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff
and Appellant, v.
STACY G., Defendant and Respondent;
ANDREW A., Appellant.

## Counsel

Michael L. Rood, County Counsel, Gustavo A. Roman and Geoffrey P. Holbrook, Deputy County Counsel, for Plaintiff and Appellant.

Valerie N. Lankford, under appointment by the Court of Appeal, for Appellant.

Julie E. Braden, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

**IRION, J.**—Minor Andrew A. and the Imperial County Department of Social Services (the Department) appeal from the juvenile court's order granting a motion for reconsideration of its jurisdictional finding—following Stacy G.'s no contest plea—on a petition filed under Welfare and Institutions Code section 300 alleging a substantial risk of harm to Andrew.[1]

We conclude that under the particular procedural circumstances of this case, the juvenile court did not have the legal authority to entertain Stacy's motion for reconsideration of its jurisdictional finding and to dismiss the petition. Instead, dismissal of the petition may be considered in connection with a future disposition hearing. We therefore reverse the juvenile court's dismissal of the section 300 petition.

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *Events Prior to the Filing of the Section 300 Petition*

Stacy gave birth to Andrew in June 2009, in a hospital in Imperial County. Hospital personnel were concerned that Stacy might be incapable of caring for Andrew because of her physical or mental disabilities. One hospital nurse reported that she doubted whether Stacy "is capable of understanding simple instructions," and another nurse expressed concerns about Stacy's ability to care for a child because she "did not have common sense" and had almost tipped over Andrew's crib when grabbing onto it to steady her balance. Stacy reported to an investigating social worker that she had "a history of scoliosis, learning disabilities, bi-polar, schizophrenia, and multiple personalities." Stacy told the social worker that she could not remember anything about the identity of Andrew's father and attributed her lack of memory to "being mentally challenged." According to Stacy, she lived alone, but her sister checked on her almost daily and she was able to care for herself with the assistance of her sister. When the social worker questioned whether Stacy's home was prepared for Andrew, Stacy responded, "I don't remember[;] you'll have to ask my sister."

The social worker spoke to Stacy's sister, who stated that she would be assisting Stacy with Andrew's care and that she believed Stacy was capable of caring for the child. When the social worked indicated that she would be conducting a home assessment before releasing Andrew to Stacy, Stacy's sister stated that they were not yet ready as the date of Stacy's cesarean delivery had been moved up, and they also did not have a key to the residence with them. The social worker took Andrew into protective custody.

A different social worker, who visited Stacy at home the next day, reported concerns about Stacy's mental capabilities. Stacy did not allow the social worker inside the home, indicated that her sister would soon be there, and reported that she did not yet have the necessary provisions to care for Andrew. Stacy told the social worker that she had previously received services through the San Diego Regional Center and had resided in a group home, but that her sister now provides in-home support services, including helping her with walking, sitting down, bathing, cooking, cleaning, laundry, groceries and money management. Stacy told the social worker that she planned to provide primary care to Andrew, but that her sister would assist her. Stacy indicated that she knew how to change a diaper, prepare formula, burp a baby and give a bath, and that she had helped to take care of her nieces. In the case of an emergency, she would dial 911.

The social worker spoke with Stacy's sister, who confirmed that she provides care for Stacy, and that she believes Stacy knows how to take care of a baby. The social worker also spoke to someone at the San Diego Regional Center, who expressed the opinion that Stacy did not have the skills to raise a child. San Diego Regional Center began providing services to Stacy around September 2008, but "services were not adequately rendered due to [Stacy's] lack of cooperation and the inability to contact [Stacy]," and Stacy inactivated her case in April 2009.

On June 30, 2009, the social worker held another face-to-face meeting with Stacy and her sister. The social worker apparently was dissatisfied with Stacy's knowledge about how often and how much she should feed Andrew. The social worker inspected Stacy's home and noted that diapers, wipes, clothing and formula were present, but she disapproved of a makeshift bed for Andrew set up on the living room floor.

B. *The Department Files a Section 300 Petition and Stacy Pleads No Contest*

The Department filed a juvenile dependency petition on July 1, 2009. The petition alleged the following supporting facts:

"b-1: The mother . . . is unable to provide regular care for the child . . . due to her physical limitations and developmental disability. There is a substantial risk that the child . . . will suffer serious physical harm or illness as evident by the mother's own statement that she requires assistance with her own basic day[-]to[-]day necessities, such as cooking, grooming and housecleaning.

"b-2: The mother . . . has failed to provide the child . . . with adequate food, clothing, and shelter, as evident by the mother's own statement that she did not have any of the basic necessities, such as formula, clothing, diapers, and bedding, for her newborn child at the time of discharge from [the hospital].

"b-3: The mother . . . is unable to provide regular care for the child . . . as evident by the . . . [h]ospital [s]taff's observation of the mother. Registered Nurse Nirvana Esqueda reports that she does not feel the mother is capable of understanding simple instructions. Furthermore, Registered Nurse Sylvia Rios witnessed the mother lose her balance and grab for the child's crib to prevent her fall; the crib almost tipped over with the child in it."

At a continued detention hearing held on July 6, 2009, Stacy submitted a waiver of rights form indicating that she was prepared to enter a no contest plea to all three allegations in the petition. Counsel for Stacy clarified (with

agreement by counsel for the Department) that Stacy was entering the plea of no contest "with the understanding of receiving family maintenance services, return of the child today to her with the assistance of her sister."[2] The juvenile court accepted the no contest plea and waiver of rights after reviewing it with Stacy and finding that she understood her rights and the consequences of her plea. The parties stipulated that the detention report would form the factual basis for the plea. Based on the detention report, the juvenile court made a jurisdictional finding that Andrew was a person described under section 300, subdivision (b). The court ordered, "[b]y stipulation," that Andrew be returned to the custody of Stacy, and that family maintenance services be provided. A disposition hearing was set for August 3, 2009.

C. *The Department Removes Andrew from Stacy's Custody Again and Files a Section 342 Petition*

The court-appointed special advocate (CASA) assigned to the case filed a report dated July 31, 2009, based on several interviews she had conducted. The report stated that Stacy appeared unable to care for Andrew, who mainly was living at the home of Stacy's sister. The CASA's report recommended that Stacy and Andrew reside in a facility associated with the San Diego Regional Center that would enable Stacy to obtain care for herself and provide for Andrew's needs.

On July 29, 2009, the Department again removed Andrew from Stacy's custody, and on July 31, it filed a subsequent petition pursuant to section 342, explaining the reasons for the removal:[3]

"b-1: The mother . . . failed to comply with the previous court order and by her own admission, stated that she needed time by herself and could not care for the child . . . . The mother . . . stated that the child . . . is not always in her care and [is] mostly in the care of her sister . . . .

"b-2: On or about July 29, 2009, [social worker] Ramos-Sotelo made a visit to the home of the sister . . . in Bombay Beach. The home was found to be in unsafe living conditions as evidenced by scrap metals, metal piping, a

---

[2] Although certain reports written after the July 6 hearing reference an agreement that Stacy's sister would reside with Stacy to take care of Andrew, we note that the stipulation presented to the juvenile court did *not* specify where Andrew would reside or whether Stacy's sister would reside with Stacy. It reflected only that Stacy would receive the "assistance of her sister" in caring for Andrew.

[3] "A section 342 'subsequent' petition is filed by the agency to allege new facts or circumstances about a current dependent child that constitute an additional ground to adjudge the child a dependent." (*Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th 1067, 1075 [117 Cal.Rptr.2d 670].)

refrigerator and other miscellaneous items in the front yard, making it diff[i]cult to make entry into the home. Imperial County [Sheriff's Department] informed [social worker] Ramos-Sotelo that the home [of the sister] was fined by Imperial County due to the home being a safety and fire hazard."

At a further detention hearing held on August 5, 2009, the juvenile court ordered Andrew to be removed from Stacy's custody, and it set a jurisdictional hearing on the section 342 petition for August 31. The minute order stated that the disposition hearing on the original section 300 petition would "trail until the [section] 342 subsequent petition is resolved."

At the August 31 hearing, counsel for Stacy stated, "I cannot represent to the Court that I believe my client fully understands the nature of these proceedings," and requested that a guardian ad litem be appointed for her. The juvenile court extensively questioned Stacy and determined that she understood what was at stake in the proceedings, and thus a guardian ad litem was not required. The juvenile court continued the jurisdictional hearing on the section 342 petition to September 21.

D. *The Juvenile Court Finds the Allegations of the Section 342 Petition Are Not Sustained, and on Stacy's Oral Motion for Reconsideration, Reverses Its Jurisdictional Finding on the Section 300 Petition*

The court held a jurisdiction hearing on the section 342 petition on September 21, 2009, and concluded that the jurisdictional allegations in the section 342 petition were not sustained. The court ordered Andrew to be returned to Stacy, as it found insufficient evidence of a risk of harm to Andrew. While delivering its ruling on the section 342 petition, the court observed, apparently referring to its jurisdictional ruling on the section 300 petition, ". . . I am embarrassed that I sustained this petition. I am embarrassed that I did not look at this young lady as a real person with real feelings and real emotions . . . . We didn't give her a chance. We didn't offer her help. We removed the baby and said you are too stupid to have this baby. What gives us the right?"

The court then discussed the status of the section 300 petition. The court noted that the disposition hearing on that petition had been ordered to trail the hearing on the section 342 petition, and it confirmed that the Department had not yet prepared the required disposition report for the section 300 petition. Counsel for Stacy then asked the juvenile court to "revisit" its jurisdictional finding on the section 300 petition and "dismiss jurisdiction in this case today." The court decided that it would treat Stacy's request as "a motion for reconsideration based on new evidence."

After an 18-minute recess, the juvenile court held a hearing on the motion for reconsideration, over the objection of counsel for the Department and Andrew, who argued that a written motion should be required and emphasized that Stacy had entered a no contest plea to the jurisdictional allegations. The juvenile court closely reviewed the allegations of the detention report on the section 300 petition, which had formed the basis of Stacy's no contest plea. It concluded that there was an insufficient factual basis to sustain the petition and dismissed it. The juvenile court stated, "I think that I did exactly what the [Department] did, and that is jump to conclusions based on other people's opinions and not look for the evidence to support it."

The juvenile court stated, however, that it "would hope that Stacy will accept voluntary services from the Department and from [the San Diego Regional Center]," and it pointed out that the San Diego Regional Center "is in the best position to assess what Stacy's needs are better than Stacy herself." The court observed, "If, after analysis, there is evidence that she is unable to care for the child, we are going to be back where we started. It could be that the social worker was correct. It could be that the assumptions that were made turn out to be true. The court is not permitted and should not make assumptions without evidence."

Both the Department and Andrew filed notices of appeal from the juvenile court's order dismissing the section 300 petition based on its determination that the jurisdictional allegations were not proven.[4]

## II

## DISCUSSION

Andrew and the Department contend that the juvenile court lacked the authority to reconsider its jurisdictional finding on the section 300 petition because of the procedural context in which reconsideration arose.

"The question whether a court is authorized to perform a certain act is a purely legal question which entails construction of statutory language and application of legal principles. Therefore, we apply de novo review." (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (2008) 162 Cal.App.4th 1408, 1414 [77 Cal.Rptr.3d 52].)

██ As we will explain, we conclude on two separate grounds that the juvenile court lacked the authority to reconsider its jurisdictional finding:

---

[4] "[A]n order dismissing a dependency petition, and failing to take jurisdiction, is an appealable order." (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 197 [23 Cal.Rptr.2d 482].)

(1) Stacy's plea of no contest barred her from bringing a motion for reconsideration; and (2) the juvenile court was barred from reconsidering its jurisdictional finding at the hearing on the section 342 petition because the parties were not provided with prior notice that the issue would be addressed at the hearing.

### A. *Stacy's No Contest Plea Barred Her from Bringing a Motion for Reconsideration*

As we have described, Stacy entered a plea of no contest to each of the allegations in the section 300 petition.

Our Supreme Court has explained that "[a] plea of 'no contest' . . . is the juvenile court equivalent of a plea of 'nolo contendere' . . . in criminal courts. A plea of 'no contest' to allegations under section 300 at a jurisdiction hearing admits all matters essential to the court's jurisdiction over the minor." (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1181 [13 Cal.Rptr.2d 724, 840 P.2d 266], citation omitted (*Troy Z.*).)[5] It is well settled that a party who enters a no contest plea to a section 300 petition is barred from bringing an appeal to challenge the sufficiency of the evidence supporting the jurisdictional allegations, as the party has already admitted all matters essential to the court's jurisdiction. (*Troy Z., supra*, 3 Cal.4th at p. 1181.)

The same principle logically applies in the context of a motion for reconsideration of a court's jurisdictional finding. Like the act of filing an appeal of a jurisdictional finding for insufficiency of the evidence, the act of making a motion for reconsideration of a jurisdictional finding serves to *contest* that finding, which is an action inconsistent with a plea of no contest. Relying on *Troy Z., supra*, 3 Cal.4th 1170, 1181, we therefore conclude that because a party who enters a no contest plea admits all matters essential to the court's jurisdiction, that party may not later make a motion for reconsideration in which it asks the court to find that it lacks jurisdiction. Only if

---

[5] A plea of no contest to a juvenile dependency petition stands in contrast to a plea in which a party agrees to *submit* the jurisdictional issue based on specific evidence before the juvenile court, such as a social worker's report. (See Cal. Rules of Court, rule 5.682(e) ["The parent or guardian may elect to admit the allegations of the petition, plead no contest, or submit the jurisdictional determination to the court based on the information provided to the court and waive further jurisdictional hearing. . . ."].) In the case of a submission, the court is required "to weigh evidence, make evidentiary findings and apply relevant law to determine whether the case has been proved." (*In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237 [9 Cal.Rptr.2d 402].) In that case, "the parent acquiesces as to the state of the evidence yet *preserves the right to challenge it as insufficient to support a particular legal conclusion.*" (*In re Richard K.* (1994) 25 Cal.App.4th 580, 589 [30 Cal.Rptr.2d 575], italics added.) Here, however, Stacy clearly submitted a no contest plea; she did not submit the jurisdictional issue based on the content of the detention report, and thus did not preserve her right to challenge the evidence as insufficient.

All further rule references are to the California Rules of Court.

Stacy had filed a successful motion to set aside her no contest plea,[6] would she no longer be barred from making a motion for reconsideration of the juvenile court's jurisdictional finding.[7]

Further, the juvenile court's error in allowing Stacy to contest the jurisdictional finding, despite her plea of no contest, constituted a miscarriage of justice and thus was reversible error. (Cf. *In re Celine R.* (2003) 31 Cal.4th 45, 60 [1 Cal.Rptr.3d 432, 71 P.3d 787] [applying the "reasonable probability" harmless error test described in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] in assessing whether error in juvenile court proceeding constituted a reversible miscarriage of justice].) As the Department explains, because it relied on the no contest plea, it did not prepare a jurisdictional report or submit additional evidence to support its jurisdictional allegations. Instead, it agreed to submit the matter on the contents of the detention report. Had the Department prepared a jurisdictional report, there is a reasonable probability that the outcome of the juvenile court's jurisdictional analysis would have been different, as the Department would have had the opportunity to develop additional facts and target its discussion specifically at establishing jurisdiction.

We conclude that because Stacy was barred from bringing a motion for reconsideration of the juvenile court's jurisdictional finding, the court committed reversible error in entertaining and granting that motion.

B. *The Juvenile Court's Ruling Granting Reconsideration Was Improper Because the Parties Did Not Receive Prior Notice*

The juvenile court's order granting reconsideration of its jurisdictional finding was improper for the further reason that the parties did not receive prior notice that the issue would be heard and decided at the September 21, 2009 hearing on the section 342 petition.

---

[6] We express no opinion on what procedure, if any, Stacy could have used to seek reconsideration of the jurisdictional finding in this case, had she first succeeded in setting aside her no contest plea, as it is unclear whether her motion for reconsideration was in fact based on new evidence or a change in circumstances. (Cf. *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92 [50 Cal.Rptr.3d 208] (*Nickolas F.*) [although a motion for reconsideration under § 388 requires a change of circumstances or new evidence, the juvenile court could nevertheless sua sponte reconsider and modify a prior order when § 388 was inapplicable].)

[7] As a leading treatise explains, when seeking to set aside a no contest plea, "a motion to set aside the . . . plea of no contest should be used. The motion must make a showing of circumstances that rendered the plea involuntary or unknowing, as in a criminal case, and not merely attempt to belatedly challenge the sufficiency of the evidence . . . ." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2010) § 2.105[3], pp. 2-218 to 2-219, citations omitted.)

██ Section 386 provides that "[n]o order changing, modifying, or setting aside a previous order of the juvenile court shall be made either in chambers, or otherwise, unless prior notice of the application therefor has been given by the judge or the clerk of the court to the social worker and to the child's counsel of record, or, if there is no counsel of record, to the child and his or her parent or guardian." Further, case law establishes that although a juvenile court has the authority under section 385 to change, modify or set aside a prior order, that action may be taken only "after providing the parties with notice and the opportunity to be heard." (*Nickolas F., supra*, 144 Cal.App.4th at p. 98.)[8]

Here, neither the Department nor Andrew received prior notice that the juvenile court would be considering whether to set aside its jurisdictional finding on the section 300 petition. Indeed, counsel for Stacy raised the issue for the first time during the September 21, 2009 hearing. The 18-minute recess—while the juvenile court read the detention report and considered whether to grant reconsideration—was not meaningful notice, as it did not give the parties sufficient time to develop and present arguments in support of their positions. (Cf. *In re Joshua M.* (1998) 66 Cal.App.4th 458, 471 [78 Cal.Rptr.2d 110] [" 'the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner" ' "].)

The lack of prior notice constituted a reversible miscarriage of justice because there is a reasonable probability that the outcome of the court's jurisdictional analysis would have been different if the parties had had prior notice. (See *In re Jesusa V.* (2004) 32 Cal.4th 588, 624 [10 Cal.Rptr.3d 205, 85 P.3d 2] [typically courts apply a harmless error analysis when a statutory mandate is disobeyed].) Specifically, with prior notice, the Department and Andrew would have had an opportunity to focus on specific evidence supporting the juvenile court's jurisdiction and could have researched and argued the legal issue of whether Stacy's no contest plea barred her from seeking reconsideration of the jurisdictional finding.

Accordingly, the juvenile court committed reversible error in granting reconsideration of its jurisdictional finding on the section 300 petition

---

[8] In light of the juvenile court's statement that it was embarrassed that it had sustained the section 300 petition, it may be possible to characterize the juvenile court's order reconsidering that decision to be a sua sponte order, rather than an order in response to a motion made by Stacy. However, even if the order was made sua sponte, the juvenile court would still be required to give prior notice to the parties, as the prior notice requirement of section 386 does not distinguish between sua sponte orders and orders made in response to a motion by a party.

because it did not give prior notice to the parties that it would be considering that issue at the September 21, 2009 hearing.

### C. The September 21, 2009 Hearing Was Not a Disposition Hearing on the Section 300 Petition

Stacy implicitly concedes that the juvenile court did not have the authority to grant reconsideration of its jurisdictional finding, stating that "the juvenile court was required to proceed to disposition after accepting the no-contest plea." Stacy argues, however, that the September 21 hearing was, in fact, a *disposition hearing* on the section 300 petition, and that the juvenile court had the authority at the disposition hearing to conclude that the petition should be dismissed for lack of jurisdiction.

■ The Department agrees, and we concur, that a juvenile court may, at a disposition hearing, dismiss the petition on whatever valid grounds it finds to be applicable. (See rule 5.695(a) ["At the disposition hearing, the court may: [¶] (1) Dismiss the petition with specific reasons stated in the minutes . . . ."].) However, the September 21, 2009 proceeding clearly was not a disposition hearing on the section 300 petition. A disposition hearing may not go forward without the preparation of a disposition report. (§ 358, subd. (b) ["Before determining the appropriate disposition, the court *shall* receive in evidence the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, and other relevant and material evidence as may be offered . . . . In any judgment and order of disposition, the court shall specifically state that the social study made by the social worker and the study or evaluation made by the child advocate appointed by the court, if there be any, has been read and considered by the court in arriving at its judgment and order of disposition." (Italics added.)]; rule 5.690(a) ["The petitioner *must* prepare a social study of the child, including all matters relevant to disposition, and a recommendation for disposition." (Italics added.)].) Here, no disposition report was prepared at the time of the September 21 hearing. Further, the juvenile court repeatedly stated that it was acting on a motion for reconsideration, not pursuant to a disposition hearing. Therefore, we reject Stacy's contention that the juvenile court had the authority to dismiss the section 300 petition on September 21 because it did so in the context of a disposition hearing.[9]

---

[9] Although her argument could be more clear, Stacy also appears to contend that because the juvenile court could have dismissed the petition at a disposition hearing, the court's act of doing so in response to a motion for reconsideration was harmless error. We disagree. Had the juvenile court held a disposition hearing, the disposition report and other evidence would have been before the court, and it is reasonably probable that the additional evidence would have resulted in a different outcome.

## DISPOSITION

The juvenile court's order dismissing the section 300 petition is reversed, and the matter is remanded with directions that the juvenile court hold a disposition hearing on the section 300 petition, at which time it may consider whether dismissal of the petition is warranted.

McDonald, Acting P. J., and Aaron, J., concurred.